# JOHN W. DOANE

## v.

# MARTHA A. WALKER.

*Filed at Ottawa December 12, 1881—Rehearing denied March Term, 1882.*

1. DOWER—*widow's quarantine—how lost.* The right of a widow, under sec. 27 of the Dower act of 1845, to retain possession of the dwelling house in which her husband most usually dwelt next before his death, together with the out-houses and plantation, etc., until her dower be assigned, like other rights, may be transferred, lost, or forfeited by her own acts, and when it becomes the subject of litigation in a court having jurisdiction to pass upon it, the owner of such right will be concluded by the adjudication with respect to it, precisely in the same way, and to the same extent, as in any other case where property rights have become the subject of judicial determination.

2. SAME—*in the particular case—where dower was not finally fixed as to all the lands.* In this case a widow filed her bill for an assignment of dower in several distinct parcels of land, claiming the right of occupancy of the homestead premises until her dower should be assigned in all the lands. The decree in the trial court allowed dower in all the property, but was silent as to the right of the widow to occupy the homestead premises until her dower should be irrevocably fixed with respect to the other lands. On appeal, the decree, in so far as it allowed dower in the homestead premises, was affirmed, but in respect to the other parcels it was reversed. It was *held*, the effect, by implication, of the adjudication in the trial court as to dower in the homestead place, being silent as to the widow's right of continued occupancy thereof, or quarantine right, until the final disposition of the question of dower in the other property, was to deny her that right, and it was gone.

3. SAME—*petition by administrator to sell land to pay debts—silence of the widow as to quarantine right—estoppel.* Where the widow, in her answer to an administrator's petition for leave to sell certain real estate to pay the debts of his intestate, fails to interpose any claim to retain possession after the assignment of her dower therein until it is finally settled as to other tracts, and the sale is ordered to be made subject to her dower, she will be estopped by the proceeding from setting up such claim as against the purchaser at the administrator's sale.

4. SAME—*on severance of title to lands.* Where a part of the lands of an intestate, in which his widow is entitled to dower, has been sold by the administrator of the estate to pay debts, after the assignment of the widow's dower therein, this will amount to a severance of the title, and the purchaser will take the land bought by him subject only to the dower therein as fixed by the decree allowing it, unaffected and freed from any alleged rights of the

widow depending upon claims against any of the other lands on account of dower, and he can not be kept out of possession until dower is assigned in the other lands in which he has no interest.

5. SAME—*rights of purchaser when widow wrongfully withholds possession—duty of the widow while in possession.* Where the widow wrongfully deprives a purchaser at an administrator's sale, of the possession of the premises bought by him, it is her duty to pay all taxes thereon, and keep the same in a state of reasonable preservation by making ordinary repairs, and if she fails to do so, she will be bound to account to him for the taxes paid by him, and to make compensation for such damages as he may have sustained by reason of her neglect to make the necessary and ordinary repairs.

6. DECREE—*denial of right by implication.* All such rights, or claims of right, as are submitted by a complainant for adjudication that are not allowed, confirmed or recognized by the decree, are by implication denied, and while such decree remains in force such rights will be barred, whether given by law or by implication.

7. CHANCERY JURISDICTION—*bill for possession of land bought, etc.* A purchaser of land at an administrator's sale, subject to the widow's yearly allowance for dower therein, filed his bill against the widow for possession of the premises, which she refused to give until her dower should be settled in other premises, and for an account of the rents and profits during the time the premises were wrongfully detained, in which he alleged in substance that during the time he had been wrongfully deprived of the possession he was forced to pay all taxes and special assessments on the property, amounting to $6000, and that during the same time the widow had neglected to make ordinary repairs, whereby the premises had become greatly injured, and were deteriorating in value; also, that during such time the rental value of the property was in excess of her claim for dower, a part of which he sought to have applied in discharge of the dower then due, and the rest to be applied on installments afterwards to become due, and showing that the widow was insolvent, and asking for an equitable set-off: *Held,* that a court of chancery, under the peculiar circumstances of the case, had jurisdiction of the bill. It was not to be regarded merely as a suit for the recovery of possession, and for use and occupation, so as to deprive the complainant of his remedy in equity.

8. SET-OFF—*when allowed in equity.* Where a widow having a claim upon the land of a purchaser for dower, which stands as an incumbrance or lien thereon, affecting its market value, is insolvent, and is liable to the purchaser in a sum in excess of the amount due from him to her for the use of the premises unjustly detained from him, so that on a fair accounting he owes her nothing, but she is largely his debtor, a court of chancery will afford the purchaser relief through the medium of an equitable set-off.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

On the 28th of May, 1874, Martin O. Walker died intestate, leaving Martha A. Walker, his widow, and Samuel O. and Edward S. Walker, his only heirs. At the time of Walker's death he was the owner in fee, subject to certain incumbrances, of several pieces of land in the city of Chicago, Cook county, including what is known, respectively, as the Fort Dearborn and the Ellis avenue property, the latter being the property now in controversy. In August following, the widow, Martha A. Walker, filed a bill in the Superior Court of Cook county against the heirs and administrator of Martin O. Walker, for the assignment of dower in all of the above mentioned lands. In January following, a decree was entered in the cause, adjudging her entitled absolutely to dower in all the property except the Fort Dearborn property, and contingently entitled to dower in that, and appointing commissioners to assign the same. On the 12th of July, 1877, the commissioners reported the premises not susceptible of division without prejudice, and at the instance of petitioner the yearly value of her dower in each separate tract was assessed by a jury, being fixed in the Ellis avenue property at $350 per annum, and in the Fort Dearborn property at $1500, subject to the contingency above referred to, and a final decree was entered accordingly, April 10, 1878. On appeal to the Appellate Court by the heirs, the above decree was reversed so far as it affected the Fort Dearborn property, but as respects the rest, including the Ellis avenue property, it was in all things affirmed, and is still in full force and effect.

Pending this proceeding for the assignment of dower, to-wit, on the 4th of April, 1876, Augustus L. Chetlain, as administrator of Martin O. Walker, filed a petition in the

probate court of Cook county for an order of sale of real estate for the payment of the debts of said estate, making Martha A. Walker, the widow, a party. In her answer to said petition she simply sets up her claim to dower in all the lands referred to in the petition, and the fact that the bill filed by her for the assignment of dower was then pending and undetermined in the Superior Court of Cook county.

On the 30th of August, 1878, an order was entered by the probate court in said proceeding, directing the administrator to sell, subject to the widow's dower, the real estate mentioned in the petition, or so much thereof as might be necessary for the payment of debts. Under this order of sale, John Doane, the appellant, on the 15th of October, 1878, at the administrator's sale, purchased the Ellis avenue property, the sale being duly approved by the court, and on the 22d of the same month received of the administrator a deed for the premises, and no question is made as to the regularity or validity of the proceedings.

The decree in the proceeding for the assignment of dower relating to the Ellis avenue property, directed the sum of $87.50 to be paid to appellee on the 21st day of May, 1878, and the like sum of $87.50 quarter-yearly thereafter, on the 21st days of August, November, February and May, during her natural life, "and these payments, by the further order of the court, were secured by making them a specific lien upon the property, with power of sale in default of payment." Upon the reversal of the decree in the Superior Court as to the Fort Dearborn property, the cause was remanded for further proceedings as to that property, and the same is still undetermined.

Under this state of facts appellee refused to surrender to appellant the Ellis avenue property, on the sole ground that her dower had not been assigned in the Fort Dearborn property. Appellant, after waiting a considerable time for the

determination of that suit, filed the present bill, by which he seeks to obtain possession of the premises in controversy, an account of the rents and profits during the time he has been kept out of possession, and to have the same applied, so far as they shall be required for that purpose, in discharge and satisfaction of what is due and to become due appellee on account of dower in said premises, which is declared to be an incumbrance and cloud on appellant's title, and the same is asked to be removed as such.

In addition to the facts already stated, the bill in this case charges that the property in question is worth some $30,000; that the improvements thereon are much out of repair, and are becoming valueless by reason of waste permitted by appellee; "that during the six years and upwards since the death of M. O. Walker, no improvements or repairs have been put on the buildings, and that they are rapidly deteriorating in value by appellee's neglect, and appellant's property rights therein are becoming greatly injured by refusal of appellee to deliver possession;" that she is insolvent, and unable to respond in damages for the unlawful detention of the premises; that during this time she has refused to pay any portion of the taxes and special assessments on said property, which appellant has been forced to pay; that at the time of appellant's purchase there were unpaid taxes in arrear upon the premises, amounting to $6000, which, in addition to the purchase money, he has since paid, and that the rents of the premises during the time he has been kept out of possession are double the amount due appellee on account of dower.

The Superior Court sustained a demurrer to this bill, and entered a final decree dismissing the same, and on appeal this decree was affirmed by the Appellate Court for the First District, and appellant thereupon removed the record to this court for review.

Messrs. Small & Moore, and Mr. Geo. L. Paddock, for the appellant:

Whenever the dower right is determined by joinder in the husband's deed of the homestead under the statutory formalities, the wife, *ipso facto*, ceases to be dowable of that land, and, as a legal result, her quarantine rights are barred, they being incident to the dower right. *Slatter* v. *Meek*, 35 Ala. 528.

If the widow may bar herself by acts prior to the decease of the husband, she certainly may by acts done after that time. Acceptance of a collateral satisfaction in lieu of dower is one of the modes in which she may so bar her claim of dower. *Jones* v. *Powell*, 6 Johns. Ch. 194.

The statutory allowance in lieu of dower, whether regarded as resulting from the voluntary act of the petitioner, or as a legal result of her relations to the property, is, in substance, a collateral satisfaction of the dower claim. Rev. Stat. 1845, "Dower," sec. 28.

It follows, that the dowress is in the attitude of any one else who has transferred his rights to property. She can not retain the thing transferred so long as the instrument working the transfer is in force and unimpeached in any respect.

The decree is based on matter arising since the former decree, requiring averment and extrinsic proof, in order that it may be made to appear to the court. The present is substantially a bill to enforce the former decree.

Speaking of bills to carry decrees into execution, Daniell, in his Chancery Pleading and Practice, page 1585, says: "A bill of this description may also be brought by or against a person claiming as assignee of a party to the decree,"—citing *Organ* v. *Gardiner*, 1 Ch. Ca. 231; *Lord Carteret* v. *Paschal*, 3 P. Wms. 197; *Binks* v. *Binks*, 2 Bligh, 593.

Messrs. Isham & Lincoln, for the appellee:

Appellee defends upon the ground that ever since the death of her husband she has been and is entitled to the posses-

sion of the homestead, under section 27 of the Dower act then in force. Until dower has been assigned in the whole of her husband's estate, the statute has given her a shelter for herself and family. Her dower in the major part of the estate has not yet been assigned. See *Strawn* v. *Strawn's Heirs*, 50 Ill. 256.

If appellant has any right to the possession of this property, his remedy is at law.

If, as appellant contends, the widow's dower has been assigned and her quarantine has expired, the heir or his assigns may maintain ejectment against her, and it is the proper remedy. 2 Scribner on Dower, p. 31; *Jackson* v. *O'Donaghy*, 7 Johns. 247.

Courts of chancery, in this State, have no jurisdiction in suits to recover possession of land held adversely. *Green* v. *Spring*, 43 Ill. 280.

Neither is there any matter of account involved in this case such as will call for interference by a court of chancery. *Craig* v. *McKinney*, 72 Ill. 312.

Mr. Justice Mulkey delivered the opinion of the Court:

A rehearing having been granted in this case, it is again brought before us for further consideration. When first before us, from the consideration then given it the conclusion was reached, that under the facts presented by the record appellee, by virtue of the 27th section of the Dower act, was, notwithstanding the decree in the proceeding to assign dower, entitled to retain possession of the premises in controversy until her dower was assigned in the Fort Dearborn property also. Upon more mature consideration, however, we are satisfied that the conclusion then reached can not be sustained, either upon principle or authority. The error into which the court then fell is attributable, probably, to giving an undue importance to the section of the statute just referred to, and at the same time under-estimating the legal

effect of the decrees, both in the proceeding to assign dower and to sell the premises to pay debts.

At first blush it would seem plausible to conclude, that inasmuch as the statute expressly declares the widow shall retain possession of the entire homestead premises until her dower is assigned, courts are powerless to disturb her in that possession until her dower is so assigned, and such is the fact if she has done nothing to authorize the courts to interpose. But the proposition is not absolutely and unconditionally true. This right of the widow to retain possession does not differ in principle from any other right which the law casts upon her with respect to the lands of her deceased husband. Like other rights, it may be transferred, lost, or forfeited by her own acts, and when it becomes the subject of litigation in a court having jurisdiction to pass upon it, the owner of such right will be concluded by the adjudication with respect to it, precisely in the same way, and to the same extent, as in any other case where property rights have become the subject of judicial determination.

Without stopping to inquire whether the 27th section of the Dower act then in force applies to the extent claimed to a case like the present, where a part of the estate to which the dower attached has been transferred under an order of court to pay debts,—but conceding, for the purposes of the argument, it does, we are nevertheless fully satisfied, from a careful consideration of the question, that appellee, by filing her bill for the assignment of dower, conferred upon the court full power and jurisdiction to adjudicate and pass upon whatever rights she had in the premises, including the right to occupy them till her dower was assigned in the other property. And the court having entered a final decree in the cause, without having provided for her further occupancy of them, and without having postponed the operation of the decree till that event, she is concluded by its provisions, and can not be heard to insist upon any rights with

respect to the premises which are not secured by the decree itself, so long as that decree remains in force. *Loomis* v. *Riley*, 24 Ill. 307; Abbott's Trial Evidence, p. 828.

The appellee, in her bill, claimed dower in the Ellis avenue property, and also the right to occupy the premises until her dower was assigned in the other property mentioned in the bill. The court, by its decree, found she was entitled to dower, saying nothing about the right to occupy the premises till her dower was irrevocably fixed with respect to the other property. This silence in the decree with respect to the right of occupancy is, in legal effect, a denial of it; for, like the right to dower, it was submitted to the adjudication of the court, and it is clear that all such rights as are submitted for adjudication that are not confirmed or recognized by the decree, are by implication denied. And it is no answer, as already stated, to say this right is expressly given by law, for all rights are given by law, either expressly, or by necessary implication, which amounts to the same thing; for it is a familiar rule that whatever is necessarily implied, is as much a part of the law as that which is expressly stated to be so.

But even if the law permitted any speculations upon this question, it is clear, from the specific provisions of the decree, that it was intended to take effect immediately. The decree, by its express terms, required appellant to commence the quarterly payments of appellee's dower on the 21st day of May, 1878, and to continue them during her natural life. As to appellant, therefore, there is no question but that the decree became operative at once, and surely, by every principle of natural justice, if it became operative as to one of the parties, it should be regarded operative as to both. Can it be seriously contended that appellee, under this decree, was entitled to the exclusive occupation and enjoyment of the premises, and also at the same time to her allowance on account of dower during such occupancy? And was it

intended that appellant should go on indefinitely making payments of this allowance, about which there can be no question, and yet at the same time be denied all participation in the use and enjoyment of the property? The simple statement of these questions shows the manifest injustice of giving the decree such a construction.

Nor will it do to say the decree must be regarded as not taking effect as to either party until after her dower is assigned in the Fort Dearborn property, for that would be not only in direct conflict with the express provision of the decree, which requires payment of the dower on specified days, but also in utter disregard of the universal and fundamental principle that all decrees and judgments take effect and become binding upon the parties from their dates, unless otherwise expressly provided.

But there are other manifest reasons why this view should not prevail; for, assuming such to be a proper construction of the decree, appellant's right to enjoy the benefit of his purchase would be made wholly dependent upon the termination of litigation between strangers in which he has no interest which the law recognizes, and over which he has not the slightest control. The rendition of the decree, and acquiescence in it, as to those premises, by all the parties to the suit, followed by the administrator's conveyance of them to appellant, was a complete severance of any supposed community of interest between appellant and the other parties to the suit, and he is now a complete stranger to the litigation going on between appellee and the heirs with respect to the Fort Dearborn property, just as much so as if a separate suit had been commenced for the assignment of dower in that property to which he was no party. This being so, there is neither reason nor justice in making his rights depend in any degree upon that litigation, for if this could be done, he might be kept out of the property indefinitely, without any power to obtain redress. By a little collusion between the

widow and one of the heirs in such a case, which might very naturally happen between mother and child, the purchaser of a part of the estate at an administrator's sale might be kept out of his property indefinitely, for he would have no power to compel the heir to assign dower in a piece of land in which he himself had no interest.

The doctrine is well settled that where the defendants in a bill for the assignment of dower, own undivided interests in the lands sought to be partitioned, and the yearly value of the dower is assessed under the statute, it is error to render a decree against all the defendants jointly for the whole amount assessed. In such case, "it should be apportioned among the defendants according to their several interests, and a decree entered against each for his proper share." *Atkin* v. *Merrell*, 39 Ill. 63; *Peyton* v. *Jeffries*, 50 id. 143; *Scammon et al.* v. *Campbell*, 75 id. 223. When this has once been done with respect to a particular piece of land, and that decree has been affirmed by a court of review, so that the rights of the parties are irrevocably fixed, as was the case here, there will remain nothing to be done except to carry the decree into effect as made. If such be the rule with respect to tenants in common where there is a community of interest, it will hardly be denied the reasons for applying it are much stronger where there has been, as was the case here, a complete severance of the interests in the lands subject to the dower, by a sale under an order of court, of a distinct part of them. After such conveyance by the administrator the heirs ceased to have any interest in the premises in controversy; and as to appellant, he has not now, nor has he at any time, so far as this record shows, had, any interest in the other pieces of property mentioned in the bill. Such being the case, it is difficult to perceive how his rights in the premises can be made to depend upon the result of a controversy with respect to which he has never had the slightest interest. But it may be said that he bought subject

to pending litigation, and must take subject to its results. That is not strictly accurate, for the litigation as to the property in controversy had already terminated when he bought, and he took subject to the decree which had previously been rendered in the dower proceeding, and which, as appears on the face of the decree itself, operated as a complete severance of appellee's dower, so that each tract became wholly unaffected by and freed from all claims against either of the others on account of dower.

It is, therefore, clear that appellant purchased the premises subject to such claims and incumbrances as existed by virtue of that decree, and no others. To the decree alone, then, we must look for the measure of his liabilities. To extend it beyond that would not only be unjust to appellant, but would certainly result in the most serious consequences. Its direct tendency would be to destroy confidence in public records, unsettle titles to landed estates, and retard their improvement and free transfer from one to another, which it has ever been the settled policy of the State to encourage.

Looking, then, to the decree alone to ascertain the extent of appellant's liability, we find he is simply required to pay appellee $87.50 quarterly, during her natural life, and this is all. On the other hand, he is clearly entitled to the possession of the property. He has all the time been, and is now, ready and willing to perform this decree on his part; nevertheless he is kept out of the possession of the premises on account of a matter he has no interest in or control over, and to which there is not the most distant allusion made in the decree. Appellant not only has the right to rely on this decree, but also on the decree in the proceeding by the administrator to sell the premises for the payment of debts, for it is through the latter he derives title. As already seen, appellee was made a party defendant to the petition of the administrator, and in her answer thereto she interposed no claim to retain possession after the assignment of her dower

in the premises in controversy until it was assigned and finally settled in the other tracts. Conceding she had such a right, she was bound then to interpose it. She will not be permitted to remain silent when duty and good faith to purchasers required her to speak, and then suffer her afterwards to come in and defeat a title acquired upon the faith of that proceeding, by setting up some new and independent claim which she failed to disclose in her answer. Good faith and fair dealing estop her from enforcing such a claim. When one is made a party to a suit affecting real estate, and is brought into court upon the ground he is supposed to have or claims some interest in it, it is his duty to fully disclose in his answer the nature and extent of his interest in the property, if he has any; and on his failure to do so, he will be estopped from afterwards setting up some new claim to the property not contained in the answer, as against one who has in good faith purchased under such proceeding.

To this rule an exception has been allowed in favor of married women with respect to their rights, and the homestead exemption laws. This exception, however, rests upon considerations of public policy, and should not be extended beyond the reasons which led to its adoption. Suppose A, claiming to be the equitable owner of a piece of land, files a bill for the purpose of recovering the same and having the title confirmed in himself, making B, who is the real and true owner, a party, the bill simply alleging, as is generally the case, that B claims to have some interest in the premises unknown to complainant, and the cause proceeds to a decree declaring the property and right of possession to be in the complainant, B, though duly summoned, having failed to disclose his title, we presume that no one, in the case supposed, would for a moment question the right of A to the premises, so long as that decree was acquiesced in by B. Until reversed, or otherwise set aside, it would be conclusive on him and all persons claiming under him. While the law

gives the widow a mere temporary defeasible right to her quarantine, it at the same time gives both the right of property and of possession absolutely to the owner in fee, which he, and those claiming under him, may enjoy forever. This being so, it is difficult to perceive upon what principle it can be reasonably claimed that the rights of the owner in fee, which are superior to all other rights in real property, may be lost by his neglect to assert them when drawn into litigation, and yet at the same time insist this mere temporary right of quarantine can not be lost in the same manner. If it be said the law gives the widow the right to retain possession till her dower is assigned, the answer is, as already stated, the law also gives the owner in fee and his heirs both the right of possession and of property for all time to come, and still both may be lost by the *laches* of the owner. So, if there is any difference in this respect between the two cases, it would seem to be in favor of the owner in fee. But on principle there is no such difference. The rights of both, within their respective spheres, are equally protected by law, yet either may be lost by neglecting to assert it when legally drawn in question.

It is objected, however, that, conceding appellant's right of possession, as claimed by him, he has a complete remedy at law, and for that reason the present bill can not be maintained. If the only object of the bill was to obtain possession of the premises, and to recover for their use and occupation during the time they have been wrongfully detained by appellee, the objection would undoubtedly be well taken; but such we do not regard as being the case. There is such a complication of circumstances, equitable in their character, connected with the objects of the bill, as in our judgment to warrant the interposition of a court of equity. For instance, it is charged in the bill, and admitted by the demurrer, that during the time appellant was wrongfully deprived of the possession of the premises he was forced to pay all taxes and

special assessments, which amounted to a considerable sum
of money, and that during the same time appellee neglected
to make ordinary repairs, by reason of which the premises
had become greatly injured and out of repair. Now, it is
clear that so long as appellee wrongfully deprived appellant
of the possession of the premises, it was her duty to keep
them in a state of reasonable preservation by making ordi-
nary repairs, and also to pay all taxes levied thereon, and
appellant, by reason of her neglect, having been forced to
incur these expenses himself, she is unquestionably bound to
account to him for them, and also to make compensation
to him for such damages as he may have sustained by reason
of her neglect to make reasonable and ordinary repairs.
Now, it is manifest that this could all be done, at least, more
conveniently in a court of equity than in an action at law for
*mesne* profits, if, indeed, it could be done at all in that kind
of proceeding.

But in addition to this, the bill discloses the further facts,
that during the time the premises were so unlawfully de-
tained the rental value of the property amounted to double
her claim for dower, a part of which appellant, by his bill,
seeks to have applied in discharge of such installments of
dower as are now due, and the residue to the payment of
such as shall hereafter become due, till the same shall be
exhausted. It is further shown that appellee is insolvent, and
that appellant's only means of obtaining satisfaction of what
is due him on account of the detention of the premises, etc.,
as just stated, is by having it set off against her claim for
dower. This, in our judgment, presents a clear case for the
application of the doctrine of equitable set-off. It may not
be technically a case of equitable set-off, yet when considered
in connection with the other circumstances of the case, we
have no question as to the right of a court of equity to assume
jurisdiction of it. Mr. Bispham, in his admirable work on
Equity Jurisprudence, in treating of this matter says: "Mere

matters of set-off will not give the court jurisdiction, for such rights can be effectually tried at law; but where there is anything peculiar in the case, so as to render it impossible for exact justice to be done by a court of law, under the statutes a court of chancery will afford relief through the medium of an equitable set-off." (Page 41, 2d ed.)

That the present case falls directly within the rule here announced, there is, in our judgment, no just room for doubt. The case is simply this: While appellee is justly liable to appellant, on account of rents, etc., in a sum double the amount due from him to her on account of her dower, this claim of hers stands as a charge and incumbrance upon his estate, operating as a cloud upon his title, and injuriously affecting its marketable value. Upon a fair accounting between them he owes her nothing, but, on the contrary, she is largely indebted to him, and yet his estate is thus incumbered. To recover a judgment at law against her would not place him in any better position than he now is,—his estate would still be incumbered with the lien for unpaid dower. The relief which is indispensable to him is to have such an adjustment of their respective claims as will result in the removal of this incumbrance from his estate, and this can only be enforced in a court of equity.

It is a mistake to suppose that the insolvency of appellee has nothing to do with this case. We regard it as a strong equitable feature of it. In *Raleigh* v. *Raleigh*, 35 Ill. 512, it was said: "The insolvency of a party against whom the set-off is claimed, is a ground for the exercise of equitable jurisdiction,"—citing *Gay* v. *Gay*, 10 Paige, 376. To the same effect is the case of *Chicago, Danville and Vincennes R. R. Co.* v. *Field et al.* 86 Ill. 272, where *Raleigh* v. *Raleigh* is cited with approval. Other authorities might be cited, but we deem it unnecessary.

We are of opinion that the Superior Court erred in sustaining the demurrer to complainant's bill, and in entering a

final decree dismissing the same, and hence it was error in the Appellate Court to affirm that decree. The judgment of the Appellate Court is therefore reversed, and the cause remanded, with directions to reverse the decree of the Superior Court and remand the cause to that court, with directions to set aside the order sustaining the demurrer, and to overrule the same, and to permit the appellee to answer the bill, if she shall be so advised.

*Judgment reversed.*

Mr. JUSTICE WALKER: I am unable to concur in the conclusion reached in this case by a majority of the court. By the rules announced, the homestead of appellee, if she has one, is barred and cut off by the decree fixing her dower, when that question was not raised or litigated in this case. There are other propositions in the opinion to which I do not assent.

Mr. CHIEF JUSTICE CRAIG, and Mr. JUSTICE DICKEY, also dissent.