ROMEO LEWIS *et al.*

*v.*

MARTHA E. PLEASANTS *et al.*

*Filed at Ottawa March 24, 1892.*

1. BILL OF REVIEW—*waiver of objection that it fails to set out a complete copy of the record sought to be reviewed.* An objection that a bill of review fails to set out a complete copy of the record sought to be reviewed, is waived if not made in the court below; and when the parties, by express stipulation, admit that all the proceedings in the matter sought to be reviewed are substantially set forth in the bill, it can not be insisted in this court that the bill is defective in this respect.

2. CONVEYANCES—*when an after acquired title passes.* Where a party makes a deed purporting to convey the fee, with full covenants of warranty, and afterward acquires a title, it will, by the express terms of the statute and by force of the doctrine of estoppel, inure to the benefit of his grantee.

3. DEVISE—*to a widow and the heirs of her.* Where a testator devises his land to his widow and the heirs of her body, under section 6 of the statute relating to conveyances, the devise will vest in her only a life estate, with remainder in fee to the heirs of her body, leaving the reversion, in case of an entire failure of issue, in the heirs-at-law of the devisor.

4. LIMITATION—*color of title—what constitutes.* A warranty deed purporting on its face to convey the title in fee is color of title in the grantee, and it makes no difference whether the same fails to pass an absolute title because the grantor had none to convey, or had no authority, in law or in fact, to convey one, or whether such want of authority appears on the face of such instrument, or *aliunde.* So, too, a tax deed is also color of title, though the tax sale may be invalid for want of a judgment. It is sufficient if it appears on its face to be regular.

5. SAME—*bad faith in acquiring title.* The grantee of land from one holding only color of title will not be affected by the want of good faith in his grantor, or his bad faith in acquiring such color of title, when such grantee has no knowledge or notice whatever of any of the facts from which the bad faith may be implied.

6. SAME—*when the possession is adverse.* Where a tenant for life acquires a tax deed, regular on its face, for a tract of land, and makes a conveyance to a purchaser, who has no notice of bad faith in acquiring such tax title, the possession of the grantee will be adverse to all the world, and not in subordination to the interests of the remainder-man.

7. Where a party, under color of title purporting on its face to convey the fee of land, has possession for over seven years, during which time he pays all taxes thereon, he will be held to be the owner thereof.

8. SAME—*as against remainder-man.* Where the grantee under a deed purporting to convey the fee, and without notice that his grantor had only a life estate, pays all taxes thereon and occupies the premises for seven successive years, such possession and payment of taxes will bar a recovery by the remainder-man, even though the seven years have not elapsed since the termination of the life estate.

WRIT OF ERROR to the Circuit Court of Woodford county; the Hon. T. M. SHAW, Judge, presiding.

This was a bill in chancery, in the nature of a bill of review, filed October 11, 1889, in the Circuit Court of Woodford county, by Romeo Lewis and others, heirs at law of Romeo Lewis, deceased, against Martha E. Pleasants, William G. Randall and others, to obtain a review, reversal and vacation of a certain decree of said court theretofore rendered, in a certain suit in chancery, in which Martha E. Pleasants, and William G. Randall were complainants, and the unknown heirs and devisees of Romeo Lewis and various other parties were defendants. The bill sets forth in substance, though not *in hæc verba,* the pleadings, the master's report and evidence, and a copy *in extenso* of the decree, in the proceedings sought to be reviewed. It then assigns and alleges various errors of law apparent upon the face of said proceedings, and also alleges various additional and supplementary facts not appearing upon said record, and prays that said decree be vacated, and also a general prayer for relief.

The bill, in the proceedings sought to be reviewed, so far as it related to defendants other than the unknown heirs and devisees of Romeo Lewis, deceased, sought merely to obtain a correction of the acknowledgment of certain deeds conveying lands not involved in the present suit, and in the title to which Romeo Lewis, in his lifetime, never had any interest. Said bill, so far as it related to matters material here, averred,

in substance, that Martha E. Pleasants was the absolute owner in fee and in the actual possession of a part of the lands now in controversy, and that William G. Randall was also the absolute owner in fee and in the actual possession of the residue of said lands ; that their grantors respectively had been seized and in possession of said lands by actual residence thereon continuously for over thirty years ; that they and each of them had a connected title deducible from the United States, also from a public officer authorized by the laws of this State to sell lands for taxes, and also from the sheriff of Woodford county or other officer authorized to sell lands on execution upon a judgment of a court of record in this State ; that they severally and their respective grantors had been in the actual possession of said lands under claim and color of title made in good faith for more than seven successive years continuously, during all of which time they and their grantors had paid all taxes assessed against said lands; that in addition thereto, Jane N. Lewis, claiming to be the lawful owner of said lands in fee simple absolute, on the 25th day of July, 1856, for a valuable consideration, by her deed of general warranty, conveyed that portion of said lands now claimed by Martha E. Pleasants to her remote grantor, William Harper, and also that part of said lands now claimed by William G. Randall, to James A. Gilbert and Charles Hayward, his grantors, and that Gilbert, Hayward and Harper, conveyed, by mesne conveyances, all their interest in said lands to Martha E. Pleasants and William G. Randall; that at the time of the purchase of said lands by Harper, Gilbert and Hayward, and the execution of the deeds to them respectively by said Jane N. Lewis, neither of them had any notice that said Jane N. Lewis was not seized in fee simple of said lands, but received said deeds believing that she had the legal title and the right to convey the same; that said Martha E. Pleasants and William G. Randall in turn took their conveyances of said lands without any notice of any claim of any outstanding title;

that they fully relied upon the goodness of said Jane N. Lewis' title and the deeds aforesaid; that under said title they and their respective grantors have been in possession and paid all taxes for over twenty-six years consecutively, and during all that time have used and enjoyed the rents and profits of said lands without molestation from any source, and that the part of said lands claimed by Martha E. Pleasants has been owned and occupied as aforesaid and the taxes paid thereon for over thirty years last past; that certain parties claiming to be heirs and devisees of Romeo Lewis, deceased, are claiming to have some interest in said lands by virtue of an alleged devise or will, an alleged copy of which was recorded in the office of the recorder of Woodford county August 15, 1866; that said complainants and their respective grantors had no notice prior to August 15, 1866, of the existence of said will; that said heirs and devisees are absolutely unknown, and refuse to bring suit to test the title to said lands as against the complainants, but said heirs and devisees claim in such a way as to depreciate the market value of said lands, and to vex and annoy the complainants. Said bill prayed that the unknown heirs and devisees of Romeo Lewis, deceased, be made parties defendant thereto, and that said will and the record thereof, and all claims of said defendants, be declared and adjudged absolutely null and void and of no effect, so far as the same may relate to said lands or any part thereof, or affect said Martha E. Pleasants and William G. Randall in relation thereto.

The present bill further alleges that an affidavit of the non-residence of the unknown heirs and devisees of Romeo Lewis, deceased, was made and filed, and that notice was thereupon served upon them by publication, and that on the 8th day of April, 1884, said defendants were defaulted and the cause was referred to the master to take proofs and report the same with his conclusions; that the master thereupon took certain proofs and made his report, finding the several allegations of

the bill to be proven, and recommending that the complainants be granted the relief prayed for; that April 16, 1884, the court rendered a final decree finding all the material facts alleged in the bill, and decreeing that the complainants' title to the lands in controversy be fully confirmed; that the alleged will of Romeo Lewis, deceased, and the alleged copy thereof recorded in the office of the recorder of Woodford county, and all claims of the defendants in and to said lands or any part thereof by virtue of said will and the record thereof be declared null and void and of no effect, so far as the same related to or affected said lands.

The present bill also alleges, as additional and supplementary facts, that Romeo Lewis entered said lands in controversy about September 4, 1838, and was the absolute owner of the same at the time of his death; that he died testate about June 25, 1843, leaving said Jane N. Lewis, his widow; that his last will and testament was executed January 8, 1842, and was duly admitted to probate in the Court of Common Pleas of Butler county, in the State of Ohio, the court which then had jurisdiction of matters of probate, the recording of wills, the granting of letters testamentary and receiving and acting upon the election of widows and the settlement of estates, on the 23d day of July, 1843; that by said will said Jane N. Lewis was appointed executrix and that she duly qualified as such; that on the 25th day of September, 1843, said Jane N. Lewis, as such widow, appeared in said court and elected to take the provisions made for her in said will, and that her said election was duly entered of record in said court and still remains in full force and effect; that Romeo Lewis, in and by his said will, directed that his lands in Florida, Arkansas and Mississippi be sold and the proceeds applied to the payment of his debts and certain money legacies provided for by his will and then devised as follows:

"I further give and devise to my dearly beloved wife, Jane N. Lewis, and to the heirs of her body, my houses and lots in

the town of Oxford, Butler county, Ohio, and all the residue of my lands in the States of Indiana and Illinois, and the rest, residue and remainder of my personal estate, goods and chattels, of every kind and description whatsoever, to be equally divided between them share and share alike."

It is further alleged that said will made no further disposition of the testator's real estate; that Jane N. Lewis departed this life on or about July 12, 1888; that there was no issue or heirs of the body of said Jane N. Lewis at the date of said will, nor at the date of the death of Romeo Lewis, nor at the date of the death of said Jane N. Lewis, and that said Romeo Lewis died without leaving issue of his body surviving him; that by reason of the foregoing facts, the only estate vested in Jane N. Lewis by said will was a life estate, which terminated at her death, and that the reversion in the lands of which Romeo Lewis died seized became vested in the complainants in the present bill, who were the only heirs at law of Romeo Lewis, deceased, at the date of the death of Jane N. Lewis; that of the complainants, Romeo Lewis Jr. was alive at the date of the death of said Romeo Lewis, deceased, and is the grandson and only surviving descendant of Theodore Lewis, a brother of Romeo Lewis, deceased; his grandfather and father having both died in the lifetime of Romeo Lewis, deceased, and that since the death of said Romeo Lewis, he has resided in the State of Indiana; that Romeo Lewis, at the time of his death, left surviving him Ellen Maria Saunders, the only child and heir at law of William Lewis, another brother of said Romeo Lewis, deceased, who also was then dead, and that the other complainants are the children and heirs at law of said Ellen Maria Saunders, she having died intestate on or about January 11, 1869, and that her said children, since her death, have resided in the State of Texas; that by reason of the foregoing facts, the complainants are the only owners in fee and are entitled to the possession of the real estate in controversy.

The bill further alleges that it was the duty of Jane N. Lewis, as tenant for life, under said will, of the lands of which her husband died seized, and as executrix of said will, to pay all taxes due and payable on said lands during her lifetime; that she having ascertained that her interest in said lands was only a life estate, and having no heirs of her body, she being unmarried and not likely to have children, in order to divert said real estate from the heirs at law of her deceased husband, and to carry the descent to her own collateral heirs, fraudulently neglected to pay the taxes on said lands, and fraudulently permitted the same to be sold for the taxes due thereon for the year 1845; that said lands were so sold for taxes on or about October 13, 1846; that in order to carry out said fraudulent scheme, said Jane N. Lewis procured her brother-in-law, Guernsey Y. Roots, to buy said lands and other lands in said Woodford county for said taxes for the year 1845 and costs, and afterwards procured an assignment of the certificate of purchase to herself, and on or about May 10, 1849, she fraudulently procured from the Sheriff of Woodford county a tax deed conveying said lands to herself; that the money used by said Roots in the purchase of said lands at said tax sale was furnished to him by said Jane N. Lewis, and that the whole proceeding was for the sole purpose of clothing her with the apparent title in fee to said lands, and thereby cut off the right of the owners of the reversion belonging to the heirs at law of said Romeo Lewis, deceased, which would accrue to them at the death of said Jane N. Lewis without heirs of her body. The complainants also allege that they were never summoned or served with a copy of said bill or received any notice of the pendency of said suit, and that they never received any notice in writing of said decree, and never knew of its existence until since the death of said Jane N. Lewis.

Charles McHugh filed his intervening petition and was made a party defendant, and thereupon he answered the bill and filed his cross-bill, alleging, in substance, that since the

rendition of the decree sought to be reviewed, and while said decree was in full force and effect, he had purchased of William G. Randall a portion of the lands described in the bill, and received from him a warranty deed therefor, and had paid part of the purchase money in cash and for the residue had given his promissory note and secured the same by mortgage of the land so conveyed, which note and mortgage had been by said Randall negotiated and sold to an innocent purchaser, said McHugh thus claiming to be an innocent and *bona fide* purchaser of said land for value, and praying that the decree sought to be reviewed be upheld, maintained and affirmed, and that his title to the lands purchased by him be quieted in the same manner and to the same extent provided by said decree.

Martha E. Pleasants answered the bill and filed her cross-bill, alleging, among other things, in substance, that prior to the rendition of the decree sought to be reviewed, she had purchased from said Randall a portion of said lands held by him for $13,200, and received from him a conveyance thereof by warranty deed; that before purchasing, she employed an attorney to examine the title, and was advised by him that the title was good, with the exception of some unimportant defects which could be cured by a decree quieting said title; that she accordingly went into possession of said lands under said warranty deed, under an agreement that she should not pay for the land until said Randall should procure a valid decree from said court curing all defects in and quieting said title, to the satisfaction of said attorney; that such decree was obtained, and on the faith of it, she paid all the purchase money, long prior to the filing of the present bill. She thereupon prayed the court to affirm said decree as to her lands, and also a general prayer for relief.

General demurrers to said cross-bills were sustained, and the cause coming on to be heard on the original bill, the answers thereto, and replications, and upon the facts appearing

in evidence, most of which were admitted by stipulation, the court found the equities to be with the defendants, and entered a decree dismissing the bill for want of equity. To reverse said decree, the complainants now bring the record to this court by writ of error.

The facts appearing by stipulation are substantially as follows: Romeo Lewis died testate at his residence in Oxford, Butler county, Ohio, June 24, 1843, aged forty-eight years, leaving no issue surviving him, but leaving Jane N. Lewis, his widow. Neither the testator nor his widow was married but once. The will of said testator was executed January 8, 1842, and was probated and recorded July 8, 1843, in the Court of Common Pleas of said Butler county, that court then having jurisdiction in matters of probate of wills. Jane Lewis was appointed executrix of said will, and discharged the duties of executrix and finally settled the personal estate in the proper court April 4, 1871. September 2, 1843, said widow, in said Court of Common Pleas, duly elected to take under said will, which election was duly entered of record and remains in force. Said widow was born July 10, 1808, and died July 11, 1888, still remaining the testator's widow, at Oxford, Ohio, where she had always resided. Three children were born to said testator and his said wife during their marriage, who all died prior to the date of said will. A fourth was born after the date of said will, who died April 20, 1843, and prior to the death of said testator. The personal estate of the testator, and the proceeds of all his lands in Arkansas Mississippi and Florida, were exhausted in paying debts, funeral expenses, costs of administration, and legacies under said will.

The collateral heirs of the testator are the descendants of his brothers. He had four brothers and no sisters. One of his brothers died before the death of the testator unmarried and without issue. Two others died before the death of the testator, each leaving one child, the complainants being the

grandchildren and only living descendants of those two broth-ers. The fourth brother survived the testator, and subse-quently died leaving a daughter, who afterward died leaving a son. Said son died leaving a will by which he devised all the interest he might have in the lands of Romeo Lewis, de-ceased, to his mother, and his mother died in 1883, after having devised the same interest to said Jane N. Lewis. It is stipulated that the interest in the lands in controversy thus devised, if any there was, passed to the defendants in this suit.

The testator, Romeo Lewis, at the date of his will and at the date of his death, was seized in fee simple of the lands in controversy, by patent from the United States, he having en-tered said lands in 1838, at the land office at Springfield, Illi-nois, but none of the defendants, or their grantors, or any one under whom they claim, except Jane N. Lewis, had any notice that he was so seized, except so far as they may be charged with constructive or implied notice from the book of land en-tries in the office of the county clerk of Woodford county, fur-nished by the Auditor of Public Accounts for purposes of taxation, or from the record of said entries at Springfield and Washington, or from the record of a deed from Jane N. Lewis to John Mohr of other land in said county, which contained a recital that the land thereby conveyed had been held by Romeo Lewis, the deceased husband of the grantor, and had been devised by the last will and testament of her said hus-band to her.

The defendants have a complete chain of title to the lands in controversy, under deeds with full covenants of warranty, and properly recorded, from Jane N. Lewis, and said lands have been actually occupied and resided upon by the defend-ants and their grantors from the date of the purchase thereof from Jane N. Lewis, a period of over twenty-five years, and during that time the defendants and their said grantors have severally paid all taxes assessed on said lands.

None of the defendants, or any of the persons through whom they claim, except Jane N. Lewis, had any knowledge whatever of the execution or probate of the will of Romeo Lewis, deceased, prior to August 15, 1866, when a certain paper purporting to be a copy of said will was recorded in the office of the recorder of Woodford county.

October 13, 1846, Guernsey Y. Roots, a brother-in-law of Jane N. Lewis, purchased said lands at a tax sale for the taxes for the year 1845, and prior to May 16, 1849, he assigned the certificate of purchase to said Jane N. Lewis, and on the day last named, the sheriff of Woodford county executed thereon a deed of said lands to said Jane N. Lewis. Said Roots knew of the execution and probate of said will and of the appointment of Jane N. Lewis as the executrix thereof, and of her election to take under said will, but none of the defendants, nor the persons through whom they claim, except Jane N. Lewis, knew of the relationship between said Root and said Jane N. Lewis. All of said lands at the time of the death of said testator, and until sold by Jane N. Lewis, were wild and uncultivated and of little value, and in a new and sparsely settled country.

The will of Romeo Lewis was written by Romeo Lewis himself, he not being a lawyer by profession, but a civil engineer and a man of intelligence and culture.

Evidence was introduced tending to show that there is no record of any judgment against said lands for the taxes of 1845, and under which said tax sale took place.

It is further stipulated that the original bill of complaint and all the proceedings in the matter sought to be reviewed in this suit are substantially set forth in the bill of complaint herein, and that no record proof thereof shall be required of either party.

The will of Romeo Lewis, which was read in evidence provided for the sale of the testator's lands in Florida, Mississippi and Arkansas, and for the payment of his debts. It

then gives various persons certain specific bequests, and concludes with the clause above set forth in full, followed by the nomination of said Jane N. Lewis sole executrix.

The only error assigned is the order of the court dismissing the bill for want of equity.

Messrs. PUTERBAUGH & PUTERBAUGH, Mr. THOMAS MILLIKIN, and Mr. PALMER W. SMITH, for the plaintiffs in error:

Possession of the land could not be adverse during the continuance of the prior life estate.   *Dwyer* v. *Schaffer*, 55 N. Y. 451; *Miller* v. *Ewing*, 6 Cush. 34; *Gernett* v. *Lynn*, 31 Pa. St. 94; *Gregg* v. *Terson*, 66 U. S. 154; 3 Washburn on Real Prop. 147; 1 id. 142, 143; Angell on Limitations, secs. 370, 371; *Steele* v. *Gelletly*, 41 Ill. 39; *Dugan* v. *Follett*, 100 id. 581; *Whiting* v. *Nichol*, 46 id. 230; *Kohn* v. *Harris*, 130 id. 525; *Metler* v. *Miller*, 129 id. 630.

Messrs. WILLIAMS & CAPEN, Mr. W. S. GIBSON, and Mr. W. G. RANDALL, for the defendants in error:

Defendants are not affected by any bad faith prior to their acquiring color of title.   *Woodward* v. *Blanchard*, 16 Ill. 433; *Chickering* v. *Failes*, 26 id. 520; *Dickinson* v. *Breeden*, 30 id. 326; *McCogg* v. *Hiecock*, 34 id. 479; *Dutton* v. *Lucas*, 63 id. 339; *Davis* v. *Hall*, 92 id. 91.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

It is urged in support of the decree, that the bill being a bill of review, is technically insufficient, in that it fails to set out a complete copy of the record of the proceedings sought to be reviewed, and therefore that the decree dismissing the bill for want of equity may be sustained on that-ground.   The defendants in error thus seek to apply to the case the rule laid down in *Kuttner* v. *Haines*, 135 Ill. 382, and the cases there cited.   It seems only necessary to say, that no such point was made in the court below, but on the contrary, that

any defect in the bill of that character was intended to be waived, or rather cured, by the express stipulation of the parties. Their stipulation was, that all the proceedings in the matter sought to be reviewed were substantially set forth in the bill, and that no record proof thereof should be required of either party. This is clearly tantamount to an admission that, for all the purposes of this suit, said proceedings were substantially and sufficiently set forth in the bill, and that the allegations of the bill should be accepted as sufficient proof of their nature and effect. In the face of such an admission, it can not be insisted now, that the bill is defective in this respect.

Divesting the case of all considerations of a merely technical character, the main question to be considered is, whether the facts shown by the record as now presented, establish title to the lands in question in the heirs of Romeo Lewis, deceased, paramount to that of the complainants in the decree sought to be reviewed.

It may be observed that as to an undivided one-third interest in said lands the heirs of said Lewis make no claim or to say the least, the evidence lays no foundation for such claim. The collateral heirs of Lewis, at the time of his death, were, a surviving brother and the children of two brothers then deceased. The descendants of those two brothers are the complainants here, and their claim can in no event cover more than an undivided two-thirds of said land. The interest, if any, which passed by descent to said surviving brother, became vested by devise in Jane N. Lewis in 1883, and as she had long previously conveyed said lands by a deed which purported to convey the fee, with full covenants of warranty, her after acquired title, by force of the doctrine of estoppel as well as by the express provisions of our statute, enured to the benefit of her grantees, and became vested in Martha E. Pleasants and William G. Randall, who, through mesne conveyances, had become the owners of the title conveyed by said warranty deed.

The contention is, that by the will of Romeo Lewis, deceased, Jane N. Lewis, his widow, became vested with only a life estate in said lands, and that, as the testator left no descendants, the reversion passed, either as a vested or contingent estate, to his collateral heirs, through whom the present complainants claim title; that Jane N. Lewis, therefore, by her deed to the remote grantors of the complainants in the original decree, conveyed only a life estate, and that, upon her death, the reversioners became the owners of the fee. The precise force to be given to the language of the devise to Jane N. Lewis is by no means clear. Said devise is as follows:

"I further give and devise to my dearly beloved wife, Jane N. Lewis, and to the heirs of her body, my houses and lots in the town of Oxford, Butler county, Ohio, and all the residue of my lands in the States of Indiana and Illinois, and the rest, residue and remainder of my personal estate, goods and chattels, of every kind and description whatsoever, to be equally divided between them, share and share alike."

If the intention of the testator was merely to devise said lands to Jane N. Lewis and the heirs of her body, the devise would, at common law, have created an estate tail general, leaving in the heirs at law of the devisor the reversion in case of an entire failure of issue. But under the provisions of the sixth section of our statute in relation to Conveyances, such devise would vest in the devisee only a life estate, with remainder in fee to the heirs of her body, and leaving the reversion, in case of an entire failure of issue, in the heirs at law of the devisor. See *Blair* v. *Vanblarcum,* 71 Ill. 290; *Fraser* v. *Supervisors, etc.* 74 id. 282; *Cooper* v. *Cooper,* 76 id. 57.

But it is claimed that the language of the will indicates an intention to devise said lands to Jane N. Lewis and the heirs of her body, to take, not in succession, but as a class, such interpretation of the will being based mainly upon the concluding words of the paragraph above quoted which provides, as is insisted, that the lands devised shall be divided, share

and share alike, among the beneficiaries therein named, viz., Mrs. Lewis and the heirs of her body. It is argued that the devise to said beneficiaries as a class is in fee, and as Mrs. Lewis is a member of said class, and the only one in being, she took the entire estate devised in fee.

As we view the case, however, it will not be necessary for us to construe the will, so as to determine the precise estate thereby devised to Mrs. Lewis, as in our opinion the decision of the case should rest on another ground not necessarily involving that question. It is admitted that the complainants in the original decree and their grantors have been in possession of said lands for over twenty-five years under the deeds from Mrs. Lewis, and that during that time they have paid all taxes assessed thereon, and the question is whether, under these circumstances, they have brought themselves within the provisions of what is now section six of our statute of limitations. That section is as follows:

"Every person in the actual possession of lands and tenements, under claim and color of title, made in good faith, and who shall for seven successive years, continue such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of such lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent, before such seven years shall have expired, and who shall continue such possession, and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section."

It is admitted that on the 25th day of July, 1856, Mrs. Lewis, by her deeds purporting to convey the fee, and containing full covenants of warranty, conveyed a portion of said lands to the remote grantor of Martha E. Pleasants, and the residue to the remote grantor of William G. Randall, and that

said Pleasants and Randall have a complete chain of title to said lands, under deeds with full covenants of warranty and properly recorded, from said remote grantors, and that said lands have been actually occupied by them and their grantors from the date of said conveyances by Mrs. Lewis, for over twenty-five years, and that during that time, they and their grantors have severally paid all taxes assessed on said lands.

The question is, whether said Pleasants and Randall are in a position to invoke the protection of the statute above cited. It is claimed on behalf of the heirs of Romeo Lewis, deceased, that Mrs. Lewis' interest in said lands at the time she made said conveyances was only an estate for life, the remainder being in said heirs, so that her grantees took only an estate for her life, and that their possession was therefore not adverse but in subordination to the title of the reversioners, and was not such a possession as could call into operation the statute of limitations. There can be no doubt that the deeds executed by Mrs. Lewis, purporting as they did to convey an estate in fee, constituted of themselves color of title in her grantees. As said in *Brooks* v. *Bruyn*, 35 Ill. 392: "Any instrument having a grantor and a grantee, and containing a description of the lands intended to be conveyed, and apt words for their conveyance, gives color of title to the lands described. Such an instrument purports to be a conveyance of the title, and because it does not, for some reason, have that effect, it passes only color or the semblance of title. It makes no difference whether the instrument fails to pass an absolute title because the grantor had none to convey or had no authority in law or in fact to convey one, or whether such want of authority appears on the face of the instrument or *aliunde*. The instrument fails to pass an absolute title for the reason that the grantor was not possessed of one or more of these requisites, and therefore it gives the semblance or color only of what its effect would be if they were not wanting." See also, *Cook* v. *Norton*, 43 Ill. 391; *Elston* v. *Ken-*

*nicott,* 46 id. 187; *Bride* v. *Watt,* 23 id. 507; *Holloway* v *Clark,* 27 id. 483; *Morrison* v. *Norman,* 47 id. 477; *Hinkley* v. *Greene,* 52 id. 225; *Yoakum* v. *Harrison,* 85 id. 202.

If the only title or apparent title of Mrs. Lewis to the lands in question at the time of the execution by her of said convey- ances, had been that derived from the will of her husband, it might perhaps be questionable whether the possession of her grantees would have been adverse to the owners of the rever- sion, so as to bar the latter under the seven years statute of limitation. That question however need not be decided, since it is admitted that several years prior to the date of said con- veyances, a tax deed, purporting to convey said lands to Mrs. Lewis in fee was executed to her by the proper officer of Woodford county, and that she was the owner of the title or apparent title thus vested in her at the time she made said conveyances. There can be no doubt, we think, that said tax deed constituted color of title, in favor at least of her grantees.

It is contended that said tax deed can not be held to be color of title because it is not shown to have been executed by virtue of a tax sale made in pursuance of a judgment of any court, such contention being based upon the evidence adduced at the hearing tending to show that there is not now any record of such judgment. This objection can not be sus- tained. Said tax deed, so far as appears and so far as is claimed by counsel, was regular on its face and purported to convey the fee, and that is all that is necessary to constitute it color of title. Such was the rule laid down in *Holloway* v. *Clark,* supra, where, after holding that a tax deed regular on its face was color of title, it was said: "Nor is a person rely- ing upon a clerk's or sheriff's deed, on a tax sale, as has been repeatedly held by this court, bound to see that all the pre- requisites of the law have been answered, before he can rely upon it as claim and color of title. If it appears on its face to be regular, that will suffice. When it so appears, the party is not required to go beyond the deed to see whether it actu-

ally passes the title or is void. If it were otherwise the stat-
ute would be useless." See also, *Stubblefield* v. *Borders*, 92
Ill. 279. In *Chickering* v. *Failes*, 26 Ill. 507, it was held that
an auditor's deed to a purchaser of land at a tax sale, although
the law under which the sale was made was unconstitutional
and the sale void, yet, in the hands of a purchaser, unless
charged with bad faith, is color of title; and may be relied
upon as a bar, when the other requirements of the statute
are complied with.

But it is further objected that, at the time the lands in
question were sold for taxes, and at the time of the assign-
ment to Mrs. Lewis of the certificate of purchase, she was
tenant of said lands for life, and as such was charged with the
payment of taxes, and consequently that the purchase of said
lands at the tax sale by her brother-in-law and the subsequent
assignment of the certificate of purchase by him to her, con-
stituted in law only a mode of payment of the taxes by her,
and therefore that the tax deed purporting to convey said
lands to her should be held to be inoperative and void.

It can not be doubted that said deed constituted color of
title in Mrs. Lewis, since it purported on its face to convey to
her the fee. The circumstances above referred to would
doubtless be evidence, as against her, of bad faith in acquir-
ing such color of title. But her want of good faith can not be
imputed to her grantees nor can it in any way affect their
rights, so long as it is shown that when they acquired from
her their title or color of title, they had no knowledge or notice
whatever of any of the facts from which bad faith on her part
may be implied. The title or semblance of title vested in Mrs.
Lewis by said tax deed passed to and became vested in them
by her conveyances, and so far as they were concerned, such
claim and color of title were made and acquired in good faith.
Such claim and color of title being to the fee, their possession
under it was adverse to every other claimant, and so was ad-
verse to the heirs of Romeo Lewis.

We are of the opinion that said Pleasants and Randall, the complainants in the original decree, having, with their respective grantors, been in possession of said lands, under claim and color of title, made in good faith, for several times the period prescribed by the statute, and having during all that time paid all taxes assessed on said lands, were properly held by the court to be the owners of said lands, to the extent and according to their paper titles, that is to say, in fee simple. Such being the case, the decree dismissing the present bill was clearly right, and must be affirmed.

*Decree affirmed.*

Subsequently, upon an application for rehearing, the following opinion was filed:

Per CURIAM: The counsel for the appellants, in their petition for a rehearing, press upon our attention the rule that the Statute of Limitations has no application to estates of reversion, until after the termination of the precedent estate, and they seek to draw therefrom the conclusion that, as the appellants' estate was a reversion after the life estate of Jane N. Lewis, the statute could not commence to run, as against them, until the death of the life tenant. If the appellees and their immediate and remote grantors holding claim and color of title under the conveyance from Jane N. Lewis were chargeable with either actual or constructive notice of the appellants' estate in reversion, there would doubtless be great force in this contention. But, as we understand the record, there is no evidence tending to charge the appellees or their grantors with such notice, at least until the statute had completely run in their favor. They took from Mrs. Lewis a deed purporting to convey the fee, and having no notice of the appellants' reversion, the principle for which counsel contend can not be invoked. This is in accordance with the rule laid down in *Dougan* v. *Follett,* 100 Ill. 581, where we held that if a party has had the undisputed possession of land under a warranty

deed for more than seven years, and during that time has paid all taxes legally assessed thereon, without actual or constructive notice of a prior unrecorded deed creating a life estate with a remainder over to others who would otherwise be tenants in common with the one so in possession, such possession and payment of taxes will be a bar to a recovery by such remainder-man, even though seven years have not elapsed since the termination of the life estate.

Since our opinion in this case was filed, a number of cases involving other lands formerly owned by Romeo Lewis, deceased, and presenting the same identical questions raised by the record now before us, have been decided by the Supreme Court of the United States, that court reaching the same conclusion, and placing its decision upon substantially the same grounds, as we have done in this case. *Lewis* v. *Bernhart,* 145 U. S. 56. We see no reason for awarding a re-hearing, and it will accordingly be denied.

*Rehearing denied.*