SUMNER MARING *et al.* Appellants, *vs.* CHARLES M.
MEEKER *et al.* Appellees.

*Opinion filed April 23, 1914.*

1. LIMITATIONS—*when adverse possession is bar.* The actual,
open, exclusive and continuous possession of land for over thirty
years under claim of right is a bar, under the Statute of Limita-
tions, against the legal title, provided the possession is hostile in
its inception.

2. SAME—*life tenant cannot hold adversely to remainder-man
and reversioner.* A life tenant cannot' hold adversely to those
holding in reversion or in remainder, nor can he create, by con-
veyance purporting to convey the absolute title to a third party, a
greater or different estate than he possesses, and as a reversioner
or remainder-man has no right of entry during the life estate, he
is not deemed guilty of *laches* in failing to assert his rights while
the life estate continues.

3. SAME—*when a deed is sufficient evidence of intent.* A deed
which is regular on its face and which purports to convey the
legal title held by the grantor is sufficient evidence of a hostile in-
tent upon which to base adverse possession.

4. SAME—*when conveyance from widow is color of title.* The
conveyance by a widow of a tract of land in which she had noth-
ing but an unassigned dower interest will be treated as a deed from
a volunteer and as good color of title, and in the absence of evi-
dence to the contrary will be presumed to have been acquired in
good faith.

5. PLEADING—*when the cross-bill need not allege that posses-
sion was hostile in its inception.* Premises may be recovered on
the ground of adverse possession notwithstanding the failure of
the cross-bill to expressly allege that the possession was hostile in
its inception, where the facts alleged and proven are sufficient to
warrant a decree and the cross-bill contains a prayer for gen-
eral relief.

6. DOWER—*unassigned dower interest is not an estate.* Until
dower has been assigned it is no estate in the land but is a per-
sonal right that lies only in action and not in grant and does not
carry with it a right of entry, and the widow can only release her
right to use and occupy the premises to the owner of the fee.

7. SAME—*when the right to possession pending assignment of
dower is lost.* The right of a widow to retain possession of land
until dower has been assigned is lost by abandoning the premises

and leaving the State, and when once the premises have been so abandoned the widow has no right to demand re-possession.

8. DEEDS—*when heir of grantor is estopped as to his interest.* A land owner or an heir who actively encourages and induces the purchasing of his land is estopped from afterwards claiming adversely to the purchaser, although the land owner or the heir might have been ignorant, at the time, of his true rights, as a purchaser may rely on the representations of the owner without further inquiry and may act upon the assumption that he is cognizant of his rights and knows the condition of his title.

9. STIPULATIONS—*when deeds may be treated as in evidence.* Under a stipulation of facts that the record shows certain deeds the deeds mentioned may be regarded as in evidence, but not as conceded to be competent or as constituting valid links in a connected chain of record title.

APPEAL from the Circuit Court of Clark county; the Hon. W. B. SCHOLFIELD, Judge, presiding.

EVERETT CONNELLY, for appellants.

W. T. HOLLENBECK, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by appellants in the circuit court of Clark county for the partition of one hundred acres of land in that county and to quiet title thereof, against appellees. The appellees filed an answer denying the allegations of the bill and alleging that they were the owners of the property in question, and also filed a cross-bill asking that the title be quieted in them to the respective tracts of which they had deeds and that the claims of appellants to any interest in the land be declared null and void. After a hearing the bill was dismissed for want of equity and a decree entered on the cross-bill quieting title in appellees to their respective tracts. Appellants thereupon, by appeal, brought the case to this court.

The land in question consists of an eighty-acre tract in section 23 of a certain township in the said county and a

twenty-acre tract in section 20 of the same township, the
two tracts being about two and a half miles apart.   Most
of the facts concerning the matters of record were intro-
duced in the form of a stipulation of facts signed by both
parties.   It appears that in 1865 both tracts were owned by
William Maring, and that he died in January of that year,
intestate, while a soldier in the Union army, leaving him
surviving his widow, Caroline, and his three children, Anna,
(now Anna Banks,) Sumner and Chester, as his only heirs-
at-law; that said Maring and his family usually dwelt on
the east half of the north-west quarter of said section 23
next before his death, and that the family were living there
at that time as their home, said tract being improved by a
dwelling house and out-houses, etc.; that the widow, to-
gether with her children, continued to reside on said eighty-
acre tract after the death of the said Maring, and that she
received all the rents, income and profits from both tracts
and paid the taxes (except those for 1866) until some time
in 1875, when she removed to another State, the children
apparently being left behind; that in 1875 one Nathan W.
Nettleton was appointed guardian of said children and pro-
ceeded to rent the premises and pay taxes until August or
September, 1880, when said widow returned to this State
and insisted on said premises being turned over to her,
threatening to cause the guardian trouble for taking charge
of them; that thereupon the latter consulted the county
judge of said county and was advised by him to surrender
possession and control of said premises to her, which was
done.   It further appears that in August or September,
1880, she negotiated with Robert O. Fix to convey to him
by warranty deed the said premises, the deed being dated
October 16, 1880, and recorded December 1 of that year,
the consideration mentioned being $1000, and that there-
upon Fix entered into possession of said premises.   She had
in the meantime married Daniel W. Working.   It further
appears that in 1859 Preston & Bros. recovered a judgment

for $197.63 against William Maring in the circuit court of
Clark· county; that an execution was issued thereon June
30, 1868; that the sheriff of the county proceeded to sell
the eighty-acre tract, and on December 7, 1869,· executed a
deed under said sale to Catlin Preston for the eighty acres
in said section. 23, said deed being recorded the same day;
that the record does not show that said judgment was re-
vived; that said Preston did not enter into possession of
said premises under said deed; that in 1870 he executed to
said widow, Caroline Maring, a quit-claim deed to the said
eighty-acre tract.   It further appears that in 1867 both the
eighty-acre and twenty-acre tracts were sold for the taxes
of 1866 to one James C. Phillips; that Phillips assigned his
certificate to William H. Coons, and that a sheriff's tax
deed was issued to said Coons December 20, 1869, and duly
recorded; that no affidavit or record thereof or proof of
service can be found as to compliance with the statute then
in force as to obtaining tax deeds.   The stipulation of facts
also states:   "It is further agreed that the complainants do
not admit nor agree that the deed from the sheriff to Cat-
lin Preston aforesaid, nor the sheriff's tax deed. to Wil-
liam H. Coons aforesaid, are competent evidence, but it
is only agreed relative thereto that the records show the
above state of facts." The stipulation further shows that
William H. Coons, the owner of said tax deed, never en-
tered into possession of said premises under and by virtue
of said deed; that he gave a quit-claim deed of said eighty-
acre tract, dated November 6, 1880, recorded November 22,
1880, to Robert O. Fix; that Anna Maring (Banks) be-
came of age May 5, 1879, Sumner Maring became of age
August 5, 1880, and Chester Maring became of age May 5,
1884; that Caroline Maring (Working) departed this life
intestate, December 5, 1912.   It further appears that Fix
entered into possession of said land,—both the eighty-acre
and the twenty-acre tracts,—under the deed from Caroline
Working in 1880; that said Fix˙has conveyed the title in

due course to bona fide purchasers, so that appellee Baker now has a deed to the south half of the eighty-acre tract, appellee Meeker a deed to the north half of said tract, and appellee McDaniel a deed to the twenty-acre tract; that Fix and his respective grantees, and those claiming under them, have been in possession of said property and receiving all the rents, income and profits therefrom down to the time of the commencement of this suit and have paid all taxes legally assessed against said land. Coons also quit-claimed the twenty-acre tract to Fix at the same time he deeded the larger tract, but the deed was lost without having been recorded.

The principal question presented for our consideration is whether the Statute of Limitations as to this land has run against appellants. There can be no question from this record that Robert O. Fix and his grantees have had actual, open, exclusive and continuous possession of this land for over thirty years. There is also no doubt that it was held by all these people under a claim of right, and, so far as they could show by their acts and words, it has been hostile since Fix entered into possession of the property, in 1880. If it was hostile in its inception, as it would have to be, under the decisions in this State, (Reuter v. Stuckart, 181 Ill. 529; Downing v. Mayes, 153 id. 330; Lambert v. Hemler, 244 id. 254; 1 Cyc. 1027;) in order to effect a bar of the legal title, then the five essential elements necessary to constitute an effective adverse possession existed. (1 Am. & Eng. Ency. of Law,—2d ed.—795.) The general rule is, that one entering as a tenant for life cannot hold adversely to those holding in reversion or in remainder. Neither can the life tenant, by conveying to a third person by a deed purporting to convey the absolute title, create a greater or different estate than he himself possesses. The Statute of Limitations does not run against a reversioner or remainderman during the prior estate, because during that time he has no right of entry. Having no right of entry he is not

deemed guilty of *laches* in failing to assert his rights dur-
ing the life estate. (*Higgins* v. *Crosby,* 40 Ill. 260; *Mett-
ler* v. *Miller,* 129 id. 630; *Cassem* v. *Prindle,* 258 id. 11;
*Lewis* v. *Barnhart,* 145 U. S. 56.) After the death of the
original life tenant the continued possession of his vendee
becomes adverse as to remainder-men or reversioners.

When did the Statute of Limitations begin to run
against appellants? Counsel for appellees insists that it be-
gan to run from the time the mother took possession after
returning to this State, in 1880. If so, then it necessarily
follows that it continued to run when the possession was
transferred by deed to Robert O. Fix and from him to his
grantees. The widow, Caroline Maring, was entitled, at
her husband's death, to dower in his real estate, and until
the assignment of dower she was entitled, under the statute
then in force, to "retain the full possession of the dwelling
house in which her husband most usually dwelt next before
his death, together with the out-houses and plantation there-
to belonging, free from molestation and rent." (Rev. Stat.
1845, chap. 34, sec. 27, p. 202.) Dower was not assigned
before she left this State, in 1875. She remained away for
five years. Her right to retain this possession did not dif-
fer, in principle, from any other right which the law cast
upon her with respect to the property of her deceased hus-
band. Like other rights it could be defeated by her own
acts. (*Doane* v. *Walker,* 101 Ill. 628; *Mettler* v. *Miller,
supra.*) The right to retain this possession under that law
was an additional remedy to enforce her assignment of
dower. By leaving the State and remaining away for five
years, during which time her children, under their guardian,
were in possession of the property, she undoubtedly lost by
abandonment her right to this additional remedy, and un-
der that law was not justified, on her return, in demand-
ing re-possession of the premises, or any part thereof, until
dower was assigned. The stipulation of facts states that
she asserted her rights, and the guardian, after consulting

with the county judge, surrendered possession and control
of the premises to her; but the statement of facts is silent
as to whether she based the assertion of her rights on her
claim of dower or because of the deed that she then held
to the eighty-acre tract, upon which the dwelling house was
located.  The claim of appellants that she demanded pos-
session in order to enforce her dower right is without force,
because she asked to have turned over not only the eighty
acres of land upon which the dwelling was located, but also
the twenty-acre tract two and a half miles away.  Her right,
as widow, to retain possession of the dwelling house and
plantation connected therewith did not give her the right
also to retain, until the assignment of dower, this twenty-
acre tract.  (*Hoots* v. *Graham,* 23 Ill. 79; 10 Am. & Eng.
Ency. of Law,—2d ed.—149, and cases cited.)  Further-
more, until dower is assigned, although she may release to
the owner of the fee her right to use and occupy the prem-
ises, a widow can make no other disposition of her dower
interest until it is set off or admeasured to her.  She has no
right of entry before it is set off to her.  Until assigned it
is no estate in the land and cannot be aliened.  It is a per-
sonal right that lies only in action, and not in grant, before
it is assigned.  (*Hoots* v. *Graham, supra; Blain* v. *Harri-
son,* 11 Ill. 384; *Best* v. *Jenks,* 123 id. 447; *Heiscn* v. *Hei-
sen,* 145 id. 658, and cases cited; 10 Am. & Eng. Ency. of
Law,—2d ed.—146; 14 Cyc. 960.)  After it is assigned it
becomes an estate which can be entered upon or conveyed by
deed.  (*Best* v. *Jenks, supra.*)  This being the law then and
now, on this record it is not reasonable to conclude that the
widow, having abandoned her right to have possession un-
til dower was assigned, was demanding her right to control
and possession under the statute in question.  She, however,
at that time did have a deed from Catlin Preston to the
eighty-acre tract.  Under this deed she was the apparent
owner of the title thereto.  In discussing a somewhat simi-
lar situation in *Lewis* v. *Pleasants,* 143 Ill. 271, this court

said (p. 287) : "There can be no doubt, we think, that said tax deed constituted color of title, in favor, at least, of her grantees." Under the rule as applied in that case, it must be said here that this deed constituted color of title, at least to Mrs. Maring's grantees.

But counsel for appellants insists that neither this deed nor the tax deed was admitted in evidence on the trial below. If they were admitted they came in under the stipulation of facts. That stipulation did not say that they were not admitted in evidence, but that appellants did not admit or agree that those deeds were competent evidence but only agreed that the record showed such deeds. From the provision just referred to, and certain other statements in the stipulation, we think that these deeds were understood to be in evidence but were not conceded to be competent or to constitute valid links in a connected chain of record title. So far as shown from the record they were regular on their face, and therefore the Preston deed, as well as the tax deed, would be sufficient evidence of hostile intent upon which to base adverse possession. *Wells* v. *Wells,* 246 Ill. 469; *Peabody* v. *Burri,* 255 id. 592; *Milliken* v. *Marlin,* 66 id. 13; *Huls* v. *Buntin,* 47 id. 396; *Taylor* v. *Hamilton,* 173 id. 392; *Thomas* v. *Eckard,* 88 id. 593. See, also, *Noyes* v. *Heffernan,* 153 Ill. 339; 1 Am. & Eng. Ency. of Law, (2d ed.) 847, and cases cited in note, 861, 862, 867; 1 Cyc. 1084.

The Preston deed being in evidence for what it is worth, the trial court was justified in holding, from the stipulation of facts, that the eighty-acre tract was taken possession of by Caroline Maring Working in 1880 under her claim of ownership under said deed from Catlin Preston. This conclusion is strongly supported—at least against Sumner Maring—by the oral testimony taken before the chancellor on the hearing. Robert O. Fix testified that in August or September, 1880, Caroline Maring and said Sumner came together to see him with reference to selling him the one

hundred acres of land in question; that Sumner then told him that his mother had .come back with a sheriff's deed from Catlin Preston; that the mother said that the children did not have any ownership in the property and that she had it under the sheriff's deed from Preston. Sumner testified, in rebuttal, that he never told Fix, at that or any other time, that his mother claimed title to this land by virtue of the Preston deed. He does not, however, deny that he was present with his mother during negotiations for the sale of the one hundred-acre tract to Fix. Neither does he deny that his mother, in his presence, told Fix that she claimed title under the Preston deed. The chancellor heard both these witnesses and was amply justified in holding that Sumner Maring was estopped from claiming any interest in this land against Fix or his grantees. Conceding that Sumner was silent during this talk, under the circumstances sworn to by Fix as to his negotiations with the mother in Sumner's presence the doctrine of estoppel would apply. It is sometimes said, and is argued here, that a person is not estopped by his silence and omission to give notice of existing rights, but that rule does not apply in case where a land owner has actively encouraged and induced the injured party to act. "In the latter case, the party making the declaration acted on will be estopped although he may have been ignorant of his true rights. The other party may rely on his representations without further inquiry and act upon the assumption that he is cognizant of his rights and knows the condition of his own title." *Robbins* v. *Moore,* 129 Ill. 30; *Cross* v. *Weare Commission Co.* 153 id. 499. See, also, *Loughran* v. *Gorman,* 256 id. 46.

As already stated, Caroline Maring had no right to retain possession of the said twenty-acre tract two and a half miles away from the farm, and evidently uncultivated, under her rights, as widow, under the Quarantine law. Neither did she have the right to enter and take possession of that tract under that claim or her claim for dower. Un-

til the dower was assigned she could not sell or convey her dower right to a stranger. The deed from Catlin Preston to her did not cover this twenty-acre tract, therefore her deed of this tract to Robert O. Fix in 1880 conveyed no right or interest of any kind. She was a mere volunteer. A deed from a mere volunteer, however, is good color of title, and the presumption, in the absence of evidence to the contrary, is that it was acquired in good faith. *Lake Shore and Michigan Southern Railway Co.* v. *Pittsburg, Ft. Wayne and Chicago Railway Co.* 71 Ill. 38, and cases there cited.

Anna (Maring) Banks and Sumner Maring were of age at the time the mother made the sale of the one hundred acre tract to Robert O. Fix, and Chester Maring became of age in 1884. In that year Chester, with his brother, Sumner, visited Robert O. Fix and negotiated a sale of their interest in a tract of land left them by their grandmother, adjoining the eighty-acre tract here in question. Fix testified that he told them he did not know that he wanted to buy it then, and they told him he had better buy it as it joined the eighty-acre tract, and it appears from the conversation that Chester then admitted, in substance, by what he said, that Fix was the owner of said eighty-acre tract. Chester himself testified that he made no such statements to Fix, but it is apparent from the entire conversation that they had the talk at the time and place mentioned, about buying the interest in the property inherited from the grandmother and that they urged upon him its purchase because of its proximity to the eighty-acre tract. The circumstances all tend to support the truth of Fix's testimony as to what took place at this conversation. Sumner and Chester Maring both testified on the trial that they knew nothing about their interest in these two tracts, as claimed in their bill, until the year 1913, shortly before this litigation was instituted.

Obviously, from all the testimony in this record, Robert O. Fix and all of the Marings who were of age considered

that the mother owned both of these tracts at the time she deeded them to Fix, in 1880. Fix, at the time he was negotiating with her for her title or interest, also negotiated for the purchase from Coons of his interest under the tax deeds covering both tracts, and apparently thought that he was purchasing by these various deeds all the interests of everyone in the property and obtaining good title thereto. In the stipulation of facts it is conceded that he entered into possession under the deed 'from Caroline Maring Working. Had he entered into possession under the deeds from Coons, based on the tax deeds, there could have been no question about such possession being hostile to the appellees in its inception and not based in any way upon Caroline Maring Working's dower right. Under the reasoning in the cases of *Lewis* v. *Pleasants, supra, Dugan* v. *Follett,* 100 Ill. 581, *Lewis* v. *Barnhart, supra,* and other cases heretofore cited, we can reach no other conclusion than that Fix took possession of both tracts under a deed which gave him color of title, and that therefore he and his grantees, and those claiming under them, have held adverse possession for the requisite length of time, (twenty years,) so that the Statute of Limitations bars a recovery by appellants. Indeed, the evidence would justify a decree based on adverse possession under color of title and seven years' payment of taxes.

Counsel for appellants further argues that there could be no recovery on the ground of adverse possession because no allegation as to the possession being hostile in its inception was made in the cross-bill filed by appellees, and that the allegations, proof and decree must correspond. If it be conceded that the cross-bill was faulty in this regard, it also contained a prayer for general relief, and it is well settled that where a bill in chancery contains a prayer for general relief it will be sufficient to sustain any decree warranted by the facts alleged in the bill. (*Shields* v. *Bush,* 189 Ill. 534, and cases cited. See, also, *Keppel* v. *Dreier,* 187 Ill. 298, and *Casstevens* v. *Casstevens,* 227 id. 547.)

The facts alleged in this bill and proved on the hearing warranted the findings in this decree.

The decree of the circuit court will be affirmed.

*Decree affirmed.*