(No. 13056.—Decree affirmed.)

LIDDIE J. GIBBS *et al.* Appellees, *vs.* CHARLES GERDES *et al.* Appellants.

*Opinion filed February 18, 1920.*

1. HOMESTEAD—*a homestead becomes a life estate after assignment.* After assignment of a homestead the estate becomes a life estate, and it is not essential to its continuance that the widow shall continue to reside upon the premises but she may occupy them by a tenant or convey them by a deed.

2. SAME—*when words in description may be rejected as surplusage.* Where the words "to the south line of said lot," in the description of a boundary in the commissioners' report setting off a homestead, are without meaning because of an error in writing the word "south" instead of the word "west," the words "to the south line of said lot" may be rejected as surplusage if a complete and accurate description of the property remains.

3. LIMITATIONS—*statute does not run against remainder-man or reversioner until after life estate.* The Statute of Limitations does not run against the remainder-man or reversioner until after the

life estate falls in, and it is only after that event that the possession will be adverse, as all statutes of limitation are based on the theory of *laches,* and no *laches* can be imputed to one who has no remedy or right of action.

4. Same—*when possession of grantees of mortgagee of homestead becomes adverse to remainder-men.* The owner of an assigned homestead estate who mortgages the premises mortgages her life estate, only, notwithstanding the mortgage states that she warrants the title; and parties who are in possession by *mesne* conveyances from the assignee of the mortgagee after foreclosure have color of title, but their possession does not become adverse to the remainder-men until after the death of the mortgagor.

APPEAL from the Circuit Court of Montgomery county; the Hon. THOMAS M. JETT, Judge, presiding.

DOBBINS & DOBBINS, for appellants.

D. R. KINDER, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Montgomery county and an order denying the motion of the appellants filed April 25, 1919, to set aside said decree and for leave to file an amended answer, in which decree partition was had of the premises described in the bill of complaint and an accounting ordered and certain deeds of the defendants and of Lydia E. Potts to Charles Gerdes were set aside as clouds upon the title of the complainants, and the defendants were decreed to be tenants for and during the life of Catherine Mullins.

The facts set out in the bill and found and decreed by the court were, that Zealous Mullins died April 2, 1892, intestate, and left him surviving Catherine Mullins, his widow, and nine children, his only heirs-at-law. Prior to and at the time of his death Mullins was seized in fee simple of the lands in question and other lands in Litchfield, Illinois. In the administration of the estate of the deceased a petition was filed to sell a portion of the real es-

tate to pay debts and to assign homestead to the widow.
On September 9, 1892, a sale of certain of the property was
ordered and the property in dispute was set off to Cather-
ine Mullins, widow, as her homestead. On May 16, 1897,
Catherine Mullins mortgaged the homestead to one Milnor
to secure an indebtedness of $210. This mortgage was as-
signed to Lydia E. Potts, who obtained a decree of strict
foreclosure in December, 1897, in which proceedings Cath-
erine Mullins, the mortgagor, and one Burton, her tenant,
were the only parties defendant. Said decree ordered Cath-
erine Mullins to pay to the plaintiff ·the sum of $253.13
within thirty days, in default of which she was forever
barred and foreclosed of all equity of redemption in the
premises and the plaintiff let into possession. Default was
made in violation of the decree and the plaintiff went into
possession as therein provided. After the decree of strict
foreclosure had gone into full force and effect, Lydia E.
Potts on December 18, 1900, in consideration of $650, sold
and conveyed to Charles Gerdes by warranty deed the prop-
erty in dispute. Thereafter Gerdes, his wife, Mary, joining
him, conveyed the land to their son, George, who conveyed
the same to his mother. Thereafter Mary Gerdes, Charles
Gerdes, her husband, joining, conveyed a part of said land ·
to their son, George. In March, 1918, the complainants,
surviving children and heirs-at-law of Zealous Mullins, filed
this bill for partition of said land, and made Charles Gerdes,
Mary Gerdes and George Gerdes parties defendant. By
the bill as amended it is sought to partition said land and
remove the aforesaid deeds of conveyance from the record
as· clouds upon the title to the land.

The original answer of appellants set out the various
deeds and the mortgage herein referred to, and averred
that the same, with possession thereunder and payment of
taxes for more than seven years, constituted such posses-
sion under color of title, with payment of taxes, as under
the statute gave them title. This answer was later with-

drawn and an amended answer was filed, admitting that defendants by these various conveyances secured only the life estate of Catherine .Mullins in this property but claiming the right to be reimbursed for money paid out in taxes, special assessments and improvements on the property. Decree was entered for partition, appointing commissioners and ordering an accounting, and continuing the cause for report of the commissioners.

After the decree was ordered entered, and pending the preparation and approval thereof, defendants became dissatisfied with the services of their counsel and sought other counsel, with the result that upon the filing of the decree their original counsel withdrew from the case and present counsel for the defendants were entered in their stead. Present counsel filed a motion to set aside the decree for partition and for leave to re-file the answer originally filed in the case, by which title is claimed in the'defendants by reason of more than seven years' possession under color of title, with payment of taxes. The chancellor denied this motion, and the defendants appealed from this order on the ground that such denial was an abuse of discretion on the part of the chancellor, for the reason that the facts showed that the answer sought to be re-filed was a complete defense to the bill for partition.

· Certain questions are raised concerning the time of the filing of the decree, but the .important question here, as we view it, is whether or not the denial of appellants' motion to set aside the decree for partition and to be allowed to re-file their original answer was an abuse of discretion.

Waiving the technical questions raised on this record and proceeding to a discussion of the case upon its merits, we find that appellants contend, first, that the facts in the record show without question that they have been in peaceable possession of the property in dispute under color of title for a period of more than seven years; that they have paid all taxes thereon; that Catherine Mullins had only a

conditional estate of homestead, which might have extended to a life estate by her continued occupancy, but that when she mortgaged the premises she abandoned that estate and the heirs of Zealous Mullins thereupon had the right to enter into possession, and that therefore the Statute of Limitations began to run against them. Counsel for appellants cite cases as supporting their contentions. Examination of the cases cited will show that in all of them there had been no assignment of the homestead to the widow. Counsel lose sight of the distinction between an estate of homestead before it is assigned and after such assignment has been had. The rule in this State is that after assignment of a homestead the estate of homestead becomes a life estate, and it is not essential to the continuance of the estate of homestead that the widow should continue to reside upon the premises. She may occupy them by a tenant or she may convey them by a deed, and her estate does not differ from an ordinary life estate. *Smith* v. *Rittenhouse,* 260 Ill. 599; *White* v. *Plummer,* 96 id. 394.

In *Smith* · v. *Rittenhouse, supra,* the question arose whether the widow of Rittenhouse could claim homestead in his lands when she had been assigned a homestead in the lands of Aull, her former husband, but which she no longer occupied, having removed to the home of Rittenhouse after her marriage with him. It was there held that after the assignment of a homestead it is not essential to the continuance of an estate that the widow should continue to reside upon the premises; that she may occupy them by a tenant or she may convey them by a deed, and her estate does not differ from an ordinary life estate; that such estate is not dependent upon her residence, and the acquisition of an estate of homestead in other lands by residence thereon is therefore not inconsistent with the continuance of the former estate.

In *White* v. *Plummer, supra,* Nathaniel Plummer died testate seized in fee of the land in question, which was the

homestead where he resided with his wife, Sarah.  His wife renounced under the will and elected to take her dower and legal share of the estate of her husband.  She continued to occupy the property in question as her homestead until by order of court it was assigned to her as such.  Prior to the commencement of the suit in that case, but subsequent to the homestead being assigned to her, she conveyed the lots for value by warranty deed in fee to the defendant.  The question was presented in that case whether or not the alienation of the premises by the widow after the same had been assigned to her by order of the court was an abandonment of her homestead right therein so as to let the residuary devisee recover possession of the property from her grantee.  It was held that such conveyance was not an abandonment of the homestead, and that the second section of the Homestead act, providing that exemption of homestead shall continue for the benefit of the wife so long as she should continue to occupy such homestead, will not apply where the homestead has been assigned; that the party who purchased the homestead from her would have the same right to possession that the widow had and could retain that right during the lifetime of the widow; that the residuary legatee had no right to recover possession of the property from the grantee of the widow during her lifetime.

*Stobaugh* v. *Irons,* 243 Ill. 55, cited by appellants, is distinguished by the opinion in that case from the case of *White* v. *Plummer, supra,* the distinction being that in the *Stobaugh case* there had been no assignment of the homestead. The widow occupied the homestead after the death of her husband until she re-married, when she went to reside with her husband.  Subsequent to her re-marriage she executed a quit-claim deed to the premises to Peter Butler, and it was held that since she had abandoned her homestead Butler took nothing by her deed.

It is the rule in this State that the Statute of Limitations does not run against a remainder-man or reversioner

until after the life estate falls in, and it is only after that event occurs that the possession will be adverse to the remainder-man or reversioner.

In *Chicago, Peoria and St. Louis Railway Co.* v. *Vaughn,* 206 Ill. 234, Josiah Vaughn, owner in fee of certain lands, conveyed the same to his two sons, reserving to himself a life estate therein. Subsequently Vaughn executed and delivered to the St. Louis, Jerseyville and Springfield Railroad Company, predecessor in title of the appellant railway company, a quit-claim deed to a strip of land fifty feet wide on each side of the central line of the railroad, the same being a portion of the land deeded to his two sons. A bill for partition was filed and the appellant made the defense that this deed from Vaughn was color of title; that appellant in good faith went into possession of the strip of land under said deed and had been in possession for more than seven years and had paid all the taxes legally assessed against the strip during that time. These facts were not disputed, but it was held that the appellant took no other or greater interest in the strip of land than was held by the life tenant, and therefore could not make a successful defense on the ground of possession and payment of taxes under section 6 of the Limitation law, for the reason that "possession of land by a tenant for life cannot be adverse to the remainder-man or reversioner, and if he conveys to a third person by words purporting to pass the absolute property, the possession of the purchaser is not, during the continuance of the life estate, adverse to the remainder-man or reversioner. The Statute of Limitations does not run against the remainder-man or reversioner until after the life estate falls in, and it is only after the latter event occurs that the possession will be adverse to the remainder-man or reversioner. The possession of the tenant for life, or his vendee during the continuance of the life tenancy, is in contemplation of law the possession of the remainder-man or reversioner. The latter cannot, during the life of

the person for whose life the life estate is, bring an action against the person in possession under such life tenancy to recover possession of the premises. 'No *laches* can be imputed to one who has no remedy or right of action, and to hold the bar of the statute could run against the title of a person so circumstanced would be subversive of justice and would be to deprive such person of his estate without his day in court.'—*Turner* v. *Hause,* 199 Ill. 464; *Mettler* v. *Miller,* 129 id. 630; *Rohn* v. *Harris,* 130 id. 525; *Higgins* v. *Crosby,* 40 id. 260."

In *Schroeder* v. *Bozarth,* 224 Ill. 310, upon the death of Louisa C. Bozarth her husband became possessed of a life estate in certain farm lands, and it was held that during his life the heirs of Louisa were barred from the right of entering into possession of the premises by reason of such life estate. It was further held that the remainder-man or reversioner cannot be barred by the Statute of Limitations until he has the right to enter; that he has no right to bring an action to recover the possession of the premises during the life of the life tenant. In the case of *Mettler* v. *Miller,* 129 Ill. 630, the same doctrine was laid down, it being held that all statutes of limitation are based on the theory of *laches,* and no *laches* can be imputed to one who has no remedy or right of action.

.In *Weigel* v. *Green,* 218 Ill. 227, this court quoted with approval the following paragraph from the case of *Barrett* v. *Stradl,* 73 Wis. 385: "When a person enters under a deed from the person who holds the life estate, which on its face conveys an estate in fee, and when the grantor intends to convey the fee and the grantee supposes he is getting a conveyance of the fee, the person entering under such deed holds, in fact, adversely to all the world; but he can not avail himself of the rights of an adverse possession, under the statute, as against the remainder-man, during the life of the owner of the life estate, but immediately upon the death of the person holding the life estate such posses-

sion, if continued, becomes adverse to the remainder-man." To the like effect was the holding in *Bartlow* v. *Chicago, Burlington and Quincy Railroad Co.* 243 Ill. 332, *Bechdoldt* v. *Bechdoldt,* 217 id. 537, and *Peterson* v. *Jackson,* 196 id. 40. See, also, *Orthwein* v. *Thomas,* 127 Ill. 554; *Rohn* v. *Harris,* 130 id. 525; *Frazer* v. *Supervisors,* 74 id. 282; *Meacham* v. *Bunting,* 156 id. 586; *Beattie* v. *Whipple,* 154 id. 273; *Borders* v. *Hodges,* id. 498; *Safford* v. *Stubbs,* 117 id. 389; *Enos* v. *Buckley,* 94 id. 458; 1 Am. & Eng. Ency. of Law, (2d ed.) 807-809.

In the instant case, when the property in dispute was set off to Catherine Mullins as a homestead she became vested with a life estate in the premises so set off to her. When she gave the mortgage to said premises she mortgaged her life estate in them, and the fact that she in the mortgage stated that she warranted the title does not have the effect to enlarge the estate which she there possessed as against the remainder-men. By the strict foreclosure of that mortgage, therefore, only the estate which she possessed passed to Lydia E. Potts, assignee of the mortgage, and while it may be conceded that the deed of Lydia E. Potts gave color of title to the grantors of appellants that fact can avail them nothing here, for the reason that the statute did not begin to run until after the death of Catherine Mullins, who died in December, 1917. The bill for partition in this case was filed in March, 1918, so that, notwithstanding color of title in appellants, the seven years required by the statute had just commenced to run when this bill was filed. It is evident, therefore, that appellants could not, by the answer sought to be re-filed, gain any further right or benefit than accrued to them under the decree for partition and accounting. In fact, had they not filed an answer asking for an accounting they would not have been in a position to receive that benefit.

But it is contended that this tract was never properly assigned to Catherine Mullins as a homestead; that the

description of the land set off by the commissioners as a homestead to her does not coincide with the description of the land mortgaged by her. An examination of the record shows that by the report of the commissioners setting off the homestead to Catherine Mullins they described the tract of land as commencing at a point 55 feet north of the southeast corner of lot 2; thence west 125 feet; thence north 85 feet; thence west 195 feet to the south line of said lot; thence north 126 feet; thence east 321 feet to the east line of said lot, and thence south 206 feet to the place of beginning. The description of the premises in the mortgage was identical with that in the report of commissioners, with the exception that instead of saying as was said in that report, "thence west 195 feet to the south line of said lot," the mortgage read, "thence west 195 feet to the west line of said lot." It is evident that the use of the term "south line" was an error in writing the report. Lot 2 is rectangular in form, the south line running due east and west and the west line thereof running due north and south. It would be impossible, therefore, to extend a line west from any point within that lot and intersect with the south line of the lot. By striking out the words "to the south line of said lot," in the commissioners' report, there remains a complete description of the property which coincides with the description in the mortgage. With those words included the description is senseless and without meaning. Such words may therefore be considered surplusage. *Stevens* v. *Wait*, 112 Ill. 544.

Under the views herein expressed it does not become necessary to determine when the decree for partition became a matter of record. There was no abuse of discretion on the part of the chancellor in denying the motion to vacate that decree and to allow the re-filing of the original answer.

The decree will be affirmed.

*Decree affirmed.*