(No. 27303.—

HETTIE EPLEY MURCH, Appellant, *vs.* LAWRENCE EPLEY *et al.*, Appellees.

*Opinion filed Nov. 16, 1943—Rehearing denied Jan. 13, 1944.*

KERN, PEARCE & PEARCE, of Carmi, for appellant.

PYLE & McCALLISTER, of Carmi, and THOMAS H. DAILY, of Shawneetown, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

This appeal presents for decision the correctness of a decree of the circuit court of White county in an action to quiet title.

Jarrett Epley, a resident of Gallatin county, died August 30, 1924. By his last will and testament, he devised all his real estate, located in Gallatin and White counties, to his wife, Hettie M. Epley, for her life and, upon her death, to his nephew, Lawrence Epley, for his life only and, upon the death of the nephew, to the latter's heirs in fee simple. The widow renounced the will and elected to take her statutory interest in the real estate, namely, an undivided one-half interest of the property and dower in the other undivided one half. November 11, 1926, Hettie Epley instituted an action in the circuit court of White county to partition the land owned by her husband. Lawrence Epley, and his four children, Elsie, Lida, Hazel and

John Epley, were made parties defendant. Plaintiff's bill for partition set forth her husband's will and alleged that, upon her renunciation, she became the owner of one half of all the real property of her husband and that Lawrence Epley and his heirs were the only other persons having any interest in, or title to, the property. A decree was entered on October 16, 1929, finding that, by virtue of her renunciation of the will, Hettie Epley became seized in fee simple of an undivided one-half interest in and to all of the lands owned by Jarrett Epley; that Lawrence Epley took a life estate only in the property and that the remainder, at his death, would vest in the heirs of his body. Commissioners were appointed to make partition between Hettie Epley and Lawrence Epley and the heirs of his body by allocating to Hettie Epley one half of the property, according to its relative value, and to Lawrence Epley and the heirs of his body the other one-half. The report of the commissioners, filed October 22, 1929, discloses that they divided the real estate in kind and, pursuant to the decree of the circuit court, set off and allotted to Hettie Epley the property in Gallatin county. Similarly, the commissioners set off and allotted to Lawrence Epley a life estate in the real estate in White county, and to the heirs of his body the remainder, conformably to the decree. The same day the report of the commissioners was confirmed. During the progress of the partition proceeding, on June 7, 1929, Lawrence Epley, by a quitclaim deed, joined by his wife, conveyed all his interest in the property to the latter. Lawrence Epley rented the land to tenants and collected the rents but did not pay the taxes assessed against the property. In the meantime, Hettie Epley remarried and will be referred to hereafter as Hettie Epley Murch. D. E. Parker purchased the property at a tax sale and, on June 11, 1932, obtained from the county clerk of White county a tax deed to the land allotted to Lawrence Epley and his children, as recounted.

This property in White county is the only portion of the land owned by Jarrett Epley, deceased, involved in the present controversy. By a quitclaim deed, also dated June 11, 1932, Parker and his wife conveyed the property to Hettie Epley Murch. She paid the taxes due in 1932, gave notice of the termination of the tenancy to Lawrence Epley's tenant, and, in August, 1933, placed her own tenant upon the property. She continued in possession of the property, paid the taxes assessed against it and collected the rents for more than eight years.

February 17, 1942, the plaintiff, Hettie Epley Murch, filed her complaint in the circuit court of White county against the defendants, Lawrence Epley, his wife, Jessie V. Epley, and their four children, Elsie Stinson, Lida Trayhan, Hazel Epley and John Epley, seeking a decree declaring her the owner in fee simple of the property. Defendants' motion to dismiss the complaint was sustained and, on October 2, 1942, plaintiff filed her amended complaint. By her second pleading, plaintiff alleges that upon her renunciation of Jarrett Epley's will she became seized in fee simple of an undivided one-half of the real estate owned by him, and that Lawrence Epley became seized in fee of the remaining undivided one-half, subject to her dower rights; that no attempt was made in the partition suit to set off dower to her; that the decree of partition erroneously adjudged Lawrence Epley to be seized and possessed of a life estate in an undivided one-half of the property, with remainder in fee to the heirs of his body; that the decree confirming the report of the commissioners was likewise erroneous; that Lawrence Epley's children claim a vested remainder interest in the property at the death of their father and that their remainder has not been barred or cut off but is superior to her title; that Lawrence Epley's wife claims an estate for the life of her husband and that her interest is superior to plaintiff's title; that Lawrence Epley claims to be the owner of the prem-

ises, and that the claims of the six defendants are clouds upon her title. The relief sought was a decree finding that Lawrence Epley's children took nothing by the decree of partition and the decree approving the report of the commissioners; that their claim to any interest in the property is a cloud upon plaintiff's title; that Lawrence Epley, by virtue of Jarrett Epley's will, and after plaintiff's renunciation, became seized in fee simple of an undivided one half of the property which ripened to full ownership of the tract in controversy as a result of the division and partition; that his quitclaim deed of June 7, 1929, passed to his wife this undivided one-half interest in the property; that after the decree of partition and the division of the property and the quitclaim deed of June 7, 1929, Lawrence Epley and his wife owned the property as equal tenants in common; that their interests passed to Parker by virtue of the tax deed of June 11, 1932, and were, in turn, conveyed to plaintiff by the quitclaim deed of Parker and his wife; that she has been in possession of the property, paid the taxes thereon more than seven years, namely, since June 11, 1932; that the claims of Lawrence Epley and his wife are clouds upon her title; that none of the defendants have any interest in the property and that their respective claims are clouds upon the title of plaintiff and should, consequently, be removed.

Defendants answered the amended complaint, denying its material allegations, and averring that, upon plaintiff's renunciation of Jarrett Epley's will, Lawrence Epley became seized of an undivided one-half interest for and during his life only; that the decree of partition properly so provided; that the tax deed issued by the county clerk to Parker was void and improperly issued, proper legal notice not having been given for the redemption of the property from the tax sale, and for the further reason that plaintiff, in an attempt to deprive defendants of their interest in the property, agreed with Parker that he should take

a tax deed and forthwith convey the property to her; that Parker's quitclaim deed to plaintiff was void as a conveyance and had the legal effect merely of a redemption by these defendants; that the interest of Lawrence Epley's children in the property is subject to his life estate, which he has conveyed to his wife, is an interest contingent upon them surviving their father, and is impressed with plaintiff's dower rights; that the interest of Lawrence Epley's wife, Jessie V. Epley, is a life estate, determinable upon her husband's death, her life estate being subject to plaintiff's dower interest, and that the interests of the several defendants is not adverse to plaintiff's dower interest but is only subservient to it. Answering further, defendants averred that at the time she obtained the quitclaim deed from Parker, plaintiff had a dower interest in the property; that since it was her duty to protect the property from tax sale the acquisition of the quitclaim deed amounted to nothing more than a redemption of the property from the tax sale, and that the redemption was for the benefit of all the defendants, as well as plaintiff. Four defendants, the children of Lawrence and Jessie Epley, in addition to answering the amended complaint, filed a counterclaim, substantially to the same effect as their answer. They asked the entry of a decree finding that plaintiff was seized and possessed of a dower interest in the property; that Jessie Epley had a life estate therein, determinable upon the death of Lawrence Epley, and that the remainder of the title was vested in the counterclaimants, subject to being divested upon one or more of them predeceasing their father. Plaintiff answered the counterclaim.

The decree, entered March 1, 1943, adjudged that plaintiff is the owner of the property for the life of Lawrence Epley; that the latter's children are the owners of the remainder interest in the property, after his death, subject to being divested in the event of the birth of other children

to Lawrence Epley. Observing, in "Remarks of Trial Court," that "Their rights as remaindermen remain fixed by the decree of 1929" and that it would be a futile act "to so decree them to be such a second time," the chancellor dismissed the counterclaim for the want of equity. Plaintiff prosecutes a direct appeal, a freehold being necessarily involved. Lawrence Epley's children have not appealed from the portion of the decree dismissing their counterclaim.

Plaintiff earnestly urges that Lawrence Epley's children have never had any interest in the property for the reason that their father, Lawrence Epley, took a fee-simple title to the real estate involved, under the will of Jarrett Epley, deceased. More than fifteen years prior to the day plaintiff commenced this action, she asked partition of the real property devised by her husband between herself and Lawrence Epley and his heirs. Plaintiff's partition suit resulted in a decree in accordance with her prayer for relief. The circuit court of White county had jurisdiction of the subject matter, namely, partition of the property in question. Likewise, the circuit court had jurisdiction of the parties, Jarrett Epley's widow, his nephew and the latter's children. The partition decree and the decree confirming the report of the commissioners were rendered by a court having jurisdiction of the subject matter and of the parties. No one of these parties prosecuted an appeal or a writ of error. It has long since become final and may not be assailed collaterally at this late day. A partition action is an adversary proceeding, not only as between the plaintiffs and defendants but as between all parties to the record of whom the court acquires jurisdiction, and every party must make known his rights in the property and have his interest protected by the decree, since he cannot, once the decree has been rendered, impeach it or set it aside in a collateral proceeding. (*Chapman* v. *Chapman*, 256 Ill. 593; *Lang* v. *Clemens*, 107 Ill. 133; *Wright*

v. *Dunning,* 46 Ill. 271.) Particularly pertinent is the observation of Mr. Justice Scholfield in *Lang* v. *Clemens,* 107 Ill. 133, "That an order or decree in partition is as binding as any other judgment ·or decree, follows, from necessity, from the fact that they have the force and effect of judgments and decrees, and no authority can be necessary to establish so obvious and familiar a proposition." Whether erroneous or correct, the decree of the circuit court of White county, in 1929, adjudging the respective interests of the parties to the present litigation to the property in controversy, was a final and appealable judgment rendered by a court having jurisdiction of both the subject matter and the parties. A concession that the construction of Jarrett Epley's will was erroneous does not aid plaintiff for the adequate reason that jurisdiction to hear and decide a cause necessarily includes the right to render an erroneous decision. *Woodward* v. *Ruel,* 355 Ill. 163.

The next question argued is whether the relationship to the property of plaintiff, who had an unassigned dower therein, precludes her from acquiring an adverse interest by acquisition of the tax title. This question was decided adversely to defendants by the chancellor. They did not see fit to prosecute a cross appeal. The propriety of the disposition of this issue, it follows, is not before us.

Plaintiff contends that even though she is bound by the decree of partition, the duty devolved upon Lawrence Epley, the life tenant, to pay the taxes levied against the real estate; that upon the nonpayment of taxes the land was sold, a new chain of title created, and the purchaser at the tax sale acquired the full title, free and clear of any and all claims, including any interest which the remaindermen had in the property. She invokes the rule that taxes levied upon real estate become a charge upon the land itself and if not paid the land may be sold for the taxes due thereon, and that the title will pass, irrespective of any encumbrance resting upon the land. (*McConnell* v. *Jones,*

332 Ill. 620.) Obviously, the interest of the remainder-men in the property was not an encumbrance. The tax deed and the quitclaim deed predicated on the tax deed were introduced in evidence. A tax deed purporting to convey the paramount title is insufficient evidence of such title, in the absence of proof of the tax judgment and precept upon which the deed is based. (*City of Chicago* v. *Collins,* 316 Ill. 104; *Blair* v. *Johnson,* 215 Ill. 552; *Gilbreath* v. *Dilday,* 152 Ill. 207.) Proof of the tax judgment and precept is wanting. On the other hand, a tax deed regular in form, obtained in good faith, constitutes good color of title under section 6 of the Limitations Act. (*Peabody* v. *Burri,* 255 Ill. 592; *Taylor* v. *Hamilton,* 173 Ill. 392; *Burton* v. *Perry,* 146 Ill. 71; *Lewis* v. *Pleasants,* 143 Ill. 271.) A quitclaim deed in regular form has been held good color of title. (*Hall* v. *Waterman,* 220 Ill. 569.) The presumption of good faith on the part of the holder of color of title obtains until rebutted by proof to the contrary. (*Gochenour* v. *Logsdon,* 375 Ill. 139; *Dawson* v. *Edwards,* 189 Ill. 60; *Taylor* v. *Hamilton,* 173 Ill. 392.) Recourse to the record discloses that, as a matter of fact, plaintiff relied upon the tax deed and the quitclaim deed as color of title. Indeed, she contends, in the alternative, that even though the deed from Parker to her be construed as color of title, only, she is, nevertheless, the owner of the property in fee simple by virtue of the seven years' Statute of Limitations.

Section 6 of the Limitations Act, so far as relevant, ordains: "Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title." (Ill. Rev. Stat. 1943, chap. 83,

par. 6.) Plaintiff insists that she has been in the actual possession of the property under claim and color of title made in good faith; that she has paid taxes for seven successive years and that she has been in the continuous, uninterrupted and actual possession for the statutory period adversely to the defendants. If these requirements have been satisfied, she has·acquired an absolute title. (*Harlan* v. *Douthit,* 379 Ill. 15; *Dunlavy* v. *Lowrie,* 372 Ill. 622; *Town of Kaneville* v. *Meredith,* 361 Ill. 556.) The chancellor decided that, so far as Lawrence· Epley and his wife are concerned, plaintiff's title is superior. Defendants, having abided by the decision, this portion of the decree is not before us for review. Apart from the question of meeting the three prerequisites to establishing a bar to the remaindermen, Lawrence Epley's children, the decisive issue remains as to whether, upon the factual situation, the statute has commenced to run against them.

It does not follow that because the operation of the Statute of Limitations against Lawrence Epley, the life tenant, transferred to and vested his life estate in the adverse holder, plaintiff, it also destroyed the interests of the remaindermen. From *Higgins* v. *Crosby,* 40 Ill. 260, to *Dunlavy* v. *Lowrie,* 372 Ill. 622, this court has repeatedly and consistently held that the statute does not begin to run against a remainderman or reversioner until the termination of the intervening ·estate and a right of entry accrues to him. *Gibbs* v. *Gerdes,* 291 Ill. 490, *Maring* v. *Meeker,* 263 Ill. 136, *Schroeder* v. *Bozarth,* 224 Ill. 310, *Blair* v. *Johnson,* 215 Ill. 552, *Turner* v. *Hause,* 199 Ill. 464, and *Mettler* v. *Miller,* 129 Ill. 630, are to the same effect. Plaintiff has, admittedly, acquired the life estate of Lawrence Epley and his present right of possession. But, as pointedly observed in *Higgins* v. *Crosby,* 40 Ill. 260: "And it is believed to be universally true that the bar of the statute can never be invoked, unless the party against whom it is sought to be used has had the oppor-

tunity of asserting his right during the statutory period. If the right is of such character that a party is not entitled to make an entry, the statute can never run. It can only begin after the right to enter has accrued. Where the title sought to be defeated by the bar is a reversion or a remainder, the holders of such titles have no right of entry * * *. Such titles are not present and existing rights of possession, but only a present interest, with a future right of possession. It would be unprecedented to hold that a right of entry was barred where such a right had never accrued. A party cannot be prejudiced by the non-assertion of a right that does not exist. It is certainly true, however, that the statute may run, and the bar become complete, against an estate for life, or for a term of years, as in such cases the right of entry is a present existing right. But in such cases when the particular estate is spent, the bar falls with that estate, and the right of entry then accrues to the remainderman or reversioner, and then, and not till then, the statute begins to run against him. And he must have the same period within which to assert his title, as was had by the owner of the particular estate."

Here, plaintiff had actual notice, at the time of the tax sale, that Lawrence Epley owned an estate for life in the land, and that the decree of partition rendered in 1929 declared Epley's children to be the remaindermen. Moreover, the record fails to disclose that plaintiff apprised the remaindermen she was claiming adversely to them prior to February 17, 1942, the day she initiated this action. Manifestly, she is not now in a position either to challenge the correctness of the partition decree or, having notice of the existence of the estate in remainder, to invoke the Statute of Limitations against the rights and interests of the four remaindermen.

The decree of the circuit court is right, and it is affirmed.

*Decree affirmed.*