(No. 31094.—

ARTHUR BEASLEY *et al.,* Appellees, *vs.* RAYMOND BEASLEY *et al.,* Appellants.

*Opinion filed Sept. 22, 1949—Rehearing denied November 21, 1949.*

KERN & PEARCE, of Carmi, JOSEPH L. BARTLEY, of Shawneetown, and CHARLES L. RICE, of Cairo, for appellants.

CRAIG & CRAIG, of Mt. Vernon, for appellees.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

A freehold being involved, this appeal comes directly here, seeking to reverse a decree of the circuit court of Gallatin County. January 19, 1881, the deed in question was executed and delivered, and on July 7, 1881, recorded in Gallatin County. It was in printed form, the blanks filled in by handwriting, and reads as follows:

"The Grantor s    *Charles Cook and Nancy. J. Cook*
    *His wife*

of the_____*First Part*_____in the County of
    *Gallatin*_____and State of_____*Illinois*

for and in consideration of_____*One Hundred*

Dollars, in hand paid, CONVEY and WARRANT to
    *Lettie. A. Beasley and her Bodley Heirs*

of the_____*Second Part*_____County of
    *Gallatin*_____and State of_____*Illinois*

the following described real estate, to-wit:
    *The North East Quarter of the North West*
    *Quarter of Section No Twenty Eight (28) in*
    *Township No, Seven (7) South of Range No*
    *Eight (8) East Containing Forty acres More*
    *or less*

Situated in the County of Gallatin in the State of Illinois, hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of this State."

The main question for decision is what interest was conveyed by this deed, and to whom. On its date Lettie A. Beasley had two living children, and two more were born to her thereafter. Her husband died in 1884 but she continued to occupy the premises until the fall of 1885. August 14, 1882, the premises were sold for taxes for the year 1881, to John D. Richeson, who procured a tax deed therefor and recorded it in Gallatin County, August 18, 1884. The validity of this tax deed was challenged at the trial and it was then offered for the purpose of showing color of title only.

Lettie A. Beasley and her husband, William Beasley, on July 9, 1881, mortgaged the premises to Helen M. Loveland, who later foreclosed the mortgage and procured a master's deed to the premises August 11, 1885, which was recorded in Gallatin County on the 29th of the same month. August 18, 1884, the tax purchaser gave a quitclaim deed to the premises to Silas Cook and on August 12, 1887, the latter was given a quitclaim deed to the same premises by the executor of the will of Helen M. Loveland, so that

he then became the holder of the two chains of title to the premises, one through the tax deed and the other through the master's deed, the former being recorded in Gallatin County on August 18, 1884, and the latter being recorded in said county September 5, 1887.

It is contended by those holding title through mesne conveyances from Silas Cook that through the deed to Lettie A. Beasley and her bodily heirs she individually took fee-simple title in the premises, or that she and her two living children took title in fee simple thereto. It is claimed, on the other hand, by the bodily heirs of Lettie A. Beasley, that the said deed created what would have been a fee-tail estate at common law, and that by virtue of section 6 of the Conveyance Act, then and still in force, (Ill. Rev. Stat. 1874, chap. 30, par. 6, and Ill. Rev. Stat. 1939, chap. 30, par. 5,) Lettie A. Beasley took a life interest in the premises with remainder to the living heirs of her body subject to being opened up to let in afterborn children.

If the deed of January 19, 1881, conveyed a fee-simple title to either Lettie A. Beasley or to her and her two children living at that time, it would seem from the record that they had lost their rights to assert title by reason of the statutes of limitations, as the evidence showed twenty years' adverse possession and also more than seven years' possession under color of title with payment of taxes. If, on the other hand, that deed created remainders in the bodily heirs of Lettie A. Beasley, a serious question arises as to whether or not their interest has been lost by reason of said statutes. We shall pass upon that point later in this opinion.

This suit for partition was filed February 28, 1940, by three of the bodily heirs of Lettie A. Beasley against her fourth bodily heir and all others claiming an interest in the real estate. The bodily heirs had given an oil-and-gas lease on the premises, and those claiming title adversely to them had given an oil-and-gas lease thereon to other persons.

Some of the original parties died while this suit was pending, but, through proper amendments, all persons interested were made parties and the court was asked to determine in whom the title was vested. Claim was made that if the bodily heirs of Lettie A. Beasley took a vested remainder in the premises through the deed in question, their rights and interests were barred by the twenty-year Statute of Limitations, (Ill. Rev. Stat. 1939, chap. 83, par. 1,) and also by the statute concerning color of title and seven years' continuous possession with payment of taxes. Ill. Rev. Stat. 1939, chap. 83, par. 6.

The circuit court found that the deed of January 19, 1881, would convey an estate tail under the common law and therefore section 6 of the Conveyances Act applied vesting a life estate in Lettie A. Beasley with remainder in the heirs of her body subject to being diminished in quantity and opened up to let in afterborn children. It further found that the statutes of limitations did not operate to run against the bodily heirs of Lettie A. Beasley during her lifetime.

All parties agree that a conveyance to one and the heirs of his body (or his bodily heirs) would be a fee-tail conveyance at common law and that the statute would apply. Appellants say, however, that the words "of the second part" following the words "to Lettie A. Beasley and her bodley heirs" change the effect of the deed in question so that it would not convey a fee-tail estate at common law. The deed contained no descriptive part and no *habendum* clause or other explanatory words. The words "and her bodley heirs" were in the granting clause. Generally, where words of this nature appear in the granting clause rather than in the descriptive or other part of the deed and there is nothing in the context to indicate a contrary intention, we have held that by their use the parties intended them to be words of limitation rather than words of purchase. *Sauls* v. *Cox,* 394 Ill. 81; *Jones* v. *Makem-*

*son,* 293 Ill. 534; *Coogan* v. *Jones,* 278 Ill. 279; *Dick* v. *Ricker,* 222 Ill. 413.

There is nothing in the context of the deed before us to indicate that the words "bodley heirs" should be given a meaning different from what they are generally understood to mean in the law of real property. Where a grantor employs words which have a definite legal significance in the law of real property, it is presumed he intended that such technical words should be given their special significance unless it appears from the context that he intended they should be given a different meaning. (*Bibo* v. *Bibo,* 397 Ill. 505; *Gridley* v. *Gridley,* 399 Ill. 215.) The license permitted in the construction of wills is not allowed in construing a deed. Failure to observe this distinction leads to confusion. *Sauls* v. *Cox,* 394 Ill. 81.

To hold that the deed in question did not create an estate tail at common law would require us to construe it as passing a present fee-simple estate either to Lettie A. Beasley, individually, or to her and her two children living at the date of the deed. In the former case, we would be required to hold the words "and her bodley heirs" meaningless, or, in the latter case, to hold that there were several grantees in the deed, namely, Lettie A. Beasley as one and her living bodily heirs as the other two. Under such construction, her afterborn bodily heirs would take nothing by the deed. We find nothing in the deed justifying such construction. Had the parties intended a fee-simple title to pass *in praesenti,* the word "children" would no doubt have been used in the place of the word "heirs," as one cannot have heirs during his life. *Sauls* v. *Cox,* 394 Ill. 81; *Aetna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406; *Cooper* v. *Cooper,* 76 Ill. 57, 65-66.

We have read the many cases cited by both appellants and appellees where deeds have been construed, but none of them has the identical language of the deed in question.

Following the above principles of law, we hold that the deed created a fee-tail estate under the common law and that section 6 of the Conveyances Act applied so that Lettie A. Beasley took a life estate in the premises, the remainder vesting in her two children then living, subject to being diminished and opened up to let in the afterborn children.

Appellants argue with much force and ability that even though the bodily heirs of Lettie A. Beasley took a vested remainder in the premises through the deed in question, they are barred by the statutes of limitations aforesaid from asserting their rights in this case because the premises were sold for taxes, a tax deed was issued which constituted color of title under which possession was taken, and the premises were held with payment of taxes on the property for more than seven successive years. They also claim a statutory bar by reason of twenty years' adverse possession under claim of ownership. Most of the appellants argue that the master's deed issued in the foreclosure proceeding likewise constituted color of title and that the same bar of the statute applies by reason of title and possession thereunder.

As against these contentions, appellees say the bar of the statutes aforesaid cannot be asserted against them because, as remaindermen, they had no right of possession until the death of their mother, the life tenant, which occurred on March 6, 1934. Shortly after the life tenant's death, the remaindermen asserted their rights within the period required by statute for that purpose and they contend there was nothing further they were required to do under the law.

The validity of the tax deed was challenged below and the court held it void. Its validity need not be determined here, as it was offered in evidence for the purpose of showing color of title only, and we find it sufficient for that pur-

pose, contrary to the lower court's decision. So, also, was the master's deed sufficient to constitute color of title.

The appellants hold their respective portions of the premises in question under mesne conveyances through the respective chains of title originating with the tax deed and the foreclosure deed, both of which centered in Silas Cook as aforesaid. We must determine whether or not the two provisions of the statute of limitations above mentioned, or either of them, may be invoked as a bar to remainder interest in real estate subject to a life estate therein. Certainly the life tenant or anyone claiming through or under such tenant could not acquire any title which would be adverse to or bar the remaindermen. *Gibbs* v. *Gerdes*, 291 Ill. 490; *Maring* v. *Meeker*, 263 Ill. 136; *Chicago, Peoria and St. Louis Railway Co.* v. *Vaughan*, 206 Ill. 234; *Rohn* v. *Harris*, 130 Ill. 525; *Mettler* v. *Miller*, 129 Ill. 630.

The mortgage of Lettie A. Beasley which was foreclosed purported to cover the fee in the premises rather than her life estate only, but it and the master's deed issued in the foreclosure proceeding did not and could not convey a greater interest than Lettie A. Beasley had in the premises. *Gibbs* v. *Gerdes*, 291 Ill. 490; *Maring* v. *Meeker*, 263 Ill. 136; *Weigel* v. *Green*, 218 Ill. 227.

Whether or not those holding under and through a tax deed which constitutes color of title can assert a bar of the statute of limitations against the remaindermen raises a more serious question, because it cannot be said that title in that case comes through the life tenant. We find but few cases bearing upon this point, although many of the cases use language indicating that no bar of the statute can be successfully interposed as against remaindermen unless the time of the bar runs subsequently to the termination of the life estate, or the remaindermen have failed to act in the time prescribed by statute after the life estate has terminated.

*Miller* v. *Pence,* 132 Ill. 149, although not wholly in point, is a case where appellee acquired a tax deed in 1879 and claimed that it passed the paramount title or, if it did not pass good title, it constituted color of title under the seven-years' statute. The lower court held that appellee's position was good as against the title holder and also as against the inchoate right of dower of his wife. In reversing the lower court's decision against the wife, we said : "She can bring no action to arrest the running of the statute. She is powerless, and can do nothing to protect herself, and yet it is said, notwithstanding all this, the statute will run, and bar her rights. It would certainly be very unjust to give the statute such a construction, and we are not inclined to do so."

In *Murch* v. *Epley,* 385 Ill. 138, title to certain land in White County was in Lawrence Epley for life with the remainder in the heirs of his body. Lawrence Epley sold his life interest to his wife June 7, 1929. June 11, 1932, D. E. Parker obtained a tax deed to said land and thereafter conveyed his interest to the plaintiff in that case, who continued in possession of the property and paid the taxes assessed against it for more than eight years. In the action to quiet title we held the tax deed void, but held that it was sufficient to constitute color of title, one of the main questions on appeal being whether or not the statute of limitations ran against the remaindermen. It was there contended by the plaintiff that upon the nonpayment of taxes the land was sold and a new chain of title created and the purchaser at the tax sale acquired the full title free and clear of any and all claims, including any interest which the remaindermen had in the property.

In that case, we said, on page 147 : "It does not follow that because the operation of the Statute of Limitations against Lawrence Epley, the life tenant, transferred to and vested his life estate in the adverse holder, plaintiff, it also

destroyed the interests of the remaindermen. From *Higgins* v. *Crosby,* 40 Ill. 260, to *Dunlavy* v. *Lowrie,* 372 Ill. 622, this court has repeatedly and consistently held that the statute does not begin to run against a remainderman or reversioner until the termination of the intervening estate and a right of entry accrues to him." We there cited with approval what was said in *Higgins* v. *Crosby,* 40 Ill. 260: "And it is believed to be universally true that the bar of the statute can never be invoked, unless the party against whom it is sought to be used has had the opportunity of asserting his right during the statutory period. If the right is of such character that a party is not entitled to make an entry, the statute can never run. It can only begin after the right to enter has accrued. * *· * A party cannot be prejudiced by the non-assertion of a right that does not exist. It is certainly true, however, that the statute may run, and the bar become complete, against an estate for life, or for a term of years, as in such cases the right of entry is a present existing right. But in such cases when the particular estate is spent, the bar falls with that estate, and the right of entry then accrues to the remainderman or reversioner, and then, and not till then, the statute begins to run against him."

Appellees cite a number of cases to support their contention that seven years' continuous possession plus payment of taxes vested fee-simple title in the holder of the tax title to the exclusion of the remaindermen. Principally among those cases are *Enos* v. *Buckley,* 94 Ill. 458, *Nelson* v. *Davidson,* 160 Ill. 254, *Field* v. *Peeples,* 180 Ill. 376. In Kales Estates Future Interests, 2nd edition, sections 389-391, pages 427-434, these cases are analyzed and the author points out that what was said in them in this connection was dictum. On page 434, he says: "The dictum of *Field* v. *Peeples,* like that of *Nelson* v. *Davidson,* runs counter to the many cases already noted, which support the general rule that reversioners and remaindermen have no right to

possession until the actual death of a life tenant who has been disseized, and whose estate for life has been barred by the statute." It is apparent from a reading of all the cases cited by appellants on this point that because of the factual situations they do not apply here.

We hold that neither of the statutes of limitations aforesaid can be set up as a bar to these remaindermen because the time relied upon to constitute the bar includes a period prior to the death of the life tenant.

Appellants say that a tax deed may not be attacked without first tendering the amount paid at the sale, all subsequent taxes paid, and interest thereon at five per cent per annum. We have held herein that the tax deed in question constituted color of title, but its validity is not before us. The lower court held that the only taxes which the remaindermen could be charged with were those accruing after the death of the life tenant and after their right of possession accrued. It also held that the rents during that period would belong to the remaindermen and that the rents more than offset the taxes. We cannot say the court was wrong in that finding.

Finally, appellants argue that the failure of the life tenant to pay the taxes is waste and gives the remaindermen a right of entry and that the remaindermen are guilty of *laches* in failing to take any steps to prevent the waste of the property by nonpayment of taxes. The law in this State is that the remaindermen cannot enter during the lifetime of the life tenant. That being true, they cannot be held guilty of *laches* in not attempting to do something they had no right to accomplish.

Other points presented and argued have been considered but need not be discussed, as what we have said fully disposes of the case. In our opinion, the decree of the lower court reached the proper result and it is affirmed.

*Decree affirmed.*